UNITED STATES of America,
Appellee,

v.

Joseph POLLARD, Appellant.

No. 73-1006.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1973.

Decided Aug. 9, 1973.

Rehearing Denied Aug. 31, 1973.

Certiorari Denied Jan. 7, 1974.
See 94 S.Ct. 882.

Leonard J. Frankel, Clayton, Mo., for appellant.

Daniel Bartlett, Jr., U. S. Atty., Jerry J. Murphy, Asst. U. S. Atty., Frederick J. Dana, Sp. Atty., U. S. Dept. of Justice, Office for Drug Abuse Law Enforcement, St. Louis, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

MATTHES, Senior Circuit Judge.

Appellant was indicted in three counts for distributing heroin on August 28, 1972[1] (Count I), on August 29 (Count II), and on August 30 (Count III), all in violation of 21 U.S.C. § 841(a)(1). He was tried, found guilty as charged, and is here by appeal from the judgment of conviction.

The facts, although in dispute, are relatively simple. On August 28, through the intermediary of Richard Armstrong, a paid government informant, Dennis Harker, a special agent of the Bureau of Narcotics and Dangerous Drugs, and Daniel Swan, a St. Louis police officer assigned to the Drug Abuse Law Enforcement Agency (DALE), both acting under cover, purchased 4.55 grams of heroin from appellant at a cost of $300. On the following two days, again by the arrangement of Armstrong and in his presence, similar transactions took place involving 41.05 grams of heroin worth $5000. At the conclusion of the third transaction appellant was arrested and taken to the DALE office where, after having been properly warned of his rights, he stated that he had obtained the heroin on all three occasions from Edward Pruitt and that he had given Pruitt the proceeds of the sales.

1. All dates refer to 1972 unless otherwise stated.

At the trial, appellant contended that he had been entrapped by Armstrong. According to appellant, who admitted being a heroin addict, Armstrong had offered him a fix and $50 if appellant would help Armstrong test heroin. Appellant's subsequent participation in the transactions for which he was indicted was allegedly at the direction of Armstrong.

We find no substance in any of appellant's contentions of error and affirm.

## I.

At the outset of the trial, appellant made an oral motion to strike the jury panel because it contained only four blacks. The motion was denied. Appellant renewed the motion at the close of voir dire on the ground that all four black veniremen had been peremptorily challenged by the government. Again, the motion was denied. Appellant submits that the failure to provide a jury panel more representative of his race, coupled with the peremptory removal by the government of those blacks that were present, established a prima facie showing of invidious discrimination in the selection of the jury.

■ Pursuant to 28 U.S.C. § 1863, the Eastern District of Missouri, like all other districts in the Eighth Circuit, has adopted a plan for random jury selection. The plan, which has been approved in accordance with the provisions of § 1863, is expressly designed to prevent discriminatory practices in the selection of jury panels. Fortuitously, the venire in the present case contained only four blacks. That circumstance, however, does not warrant the striking of the panel. As we noted in United States v. Williams, 421 F.2d 529, 531 (8th Cir. 1970):

> "Appellant was not constitutionally entitled to have either a Negro or one of his 'peers' on his petit jury panel; rather, he was constitutionally entitled to a jury array which had been *selected* from a cross-section of the eligible persons in the community at large without systematic and intentional ex-

clusion or discrimination as to racial, religious, political, economic, geographical or social status."

*See* Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); United States v. Olson, 473 F.2d 686, 688 (8th Cir. 1973).

Appellant has made no effort to attack the jury selection process itself, and, in our view, could not have prevailed in any such attempt.

■ Nor does the fact that the government peremptorily challenged all four black veniremen support a finding of unlawful discrimination. As was said by Mr. Justice White in Swain v. Alabama, *supra,* 380 U.S. at 222, 85 S.Ct. at 837:

> "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it."

*See* United States v. Pearson, 448 F.2d 1207, 1214–1215 (5th Cir. 1971); Maxwell v. Stephens, 348 F.2d 325, 331–332 (8th Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965).

The Supreme Court in *Swain* concluded, however, that the presumption protecting the prosecutor may be overcome, and a prima facie case of discrimination established, by proof of a prosecutor's systematic exclusion of blacks from petit juries over an extended period of time. 380 U.S. at 224, 86 S.Ct. 387. *See* United States v. Pearson, *supra.* No such proof has been offered in the present case.

## II.

Pursuant to an order of the trial court, the government informed appellant prior to trial of Richard Armstrong's name and address. Thereafter

appellant attempted to locate Armstrong in order to subpoena him to appear at the trial as a witness for the defense. When all efforts proved unsuccessful, appellant asked the court for an order requiring the government to produce Armstrong. The denial of that request is the subject of appellant's second claim of error.

Both in his brief and on oral argument to this court, appellant suggested that the government could have produced Armstrong if it had been in its best interests to do so. The government, on the other hand, stated that it had no knowledge of Armstrong's whereabouts, and that since Armstrong and appellant had grown up together, Armstrong was equally available to both sides.

After submission of the case to us on May 17, 1973, we resolved that the government should have been compelled to demonstrate its inability through reasonable efforts to produce Armstrong.[2] In so deciding, we adopted the reasoning of Velarde-Villarreal v. United States, 354 F.2d 9 (9th Cir. 1965), in which it was said:

> "[S]ince the Government chooses to utilize such agents, with the attendant risk of entrapment, it is fair to require the Government which uses this inherently dangerous procedure to take appropriate precautions to insure that no innocent man should be punished.
>
> \*    \*    \*    \*    \*    \*
>
> If [the informant] is available for hire, he should be available to come and testify. . . . We think whether there was a failure to expend every reasonable effort to obtain the witness is a question of fact for the trial judge."

354 F.2d at 13.

In accordance with the teachings of *Velarde,* we issued an order, filed May 18, 1973, 479 F.2d 310, 8 Cir., remanding the cause

"to the trial court for the [limited] purpose of holding a further hearing at which the Government shall be given the opportunity of proving if such be the case that it was genuinely unable through reasonable efforts to produce [Armstrong] and also, if such be the case, that the Government did not take steps to see to it that [Armstrong] would be or become unavailable as a witness. The burden of proving these things should be on the Government."

479 F.2d at 511.

Pursuant to our order, the trial judge held a plenary hearing on June 1, 1973. The testimony of government witnesses established that Armstrong had received at least one threat on his life as a result of his testimony as a government witness in a prior narcotics case in which he had participated as an informant. Subsequent to the close of that case, Armstrong disappeared and efforts to locate him were fruitless. Agent Harker testified that he had attempted to subpoena Armstrong for the hearing, and had been unsuccessful, although he had talked to him on the telephone. Following the hearing, the trial court issued an order, dated June 8, 1973, finding

> "that the Government expended every reasonable effort to procure the testimony of Richard Armstrong at said trial and was genuinely unable through such reasonable efforts to produce Armstrong as a witness [and] that the Government took no steps whatever to see to it that Armstrong would be or become unavailable as a witness in this case."

We have carefully examined the record of the evidentiary hearing, and we agree with the trial judge that the government sustained its burden of proof on this issue.

Our resolution of this question also disposes of appellant's alternative claim that the trial court erred in refusing to

---

2. In United States v. Williams, 481 F.2d 735 (8th Cir. 1973), this court distinguished the present case and held that, on the facts presented, the government was not required to call the informant to testify.

give appellant's requested missing witness instruction.

### III.

■ Appellant's third contention is that the trial court erred in refusing to rule, as a matter of law, that appellant had been entrapped. Appellant relies on United States v. Bueno, 447 F.2d 903 (5th Cir. 1971), in which the court held that if the defendant testifies to facts which establish entrapment as a matter of law, and the government cannot come forward with evidence to contradict defendant's testimony, the defendant is entitled to discharge.

Appellant argues that the only witness who could have contradicted appellant's testimony that he had been entrapped was Armstrong, and Armstrong, of course, did not testify.

It is by no means clear that the facts testified to by appellant, if undisputed, would have established entrapment as a matter of law. See United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). But we need not decide that difficult question since appellant's testimony in this case was plainly contradicted in several respects. And it is fundamental that in determining the sufficiency of the evidence to sustain the conviction we view it in the light most favorable to the government. Plainly, the issue of entrapment goes to the heart of appellant's guilt or innocence. Appellant denied handing the drugs to Harker on the first two occasions. Harker, on the other hand, testified that he received the heroin directly from appellant in both instances. Appellant denied discussing a possible third sale on the second occasion, and he denied telling Harker where the heroin was hidden when the third transaction took place. Most damaging to appellant's claim of entrapment, however, are his own oral statements made following his arrest indicating that he had obtained the heroin from, and returned the proceeds to, someone other than Armstrong.

### IV.

Appellant complains that the trial court failed to instruct the jury that the burden was on the government to prove beyond a reasonable doubt that the defendant was not entrapped.

The entrapment instruction included in the court's charge in this case can be found in Devitt & Blackmar, Federal Jury Practice and Instructions § 13.13 (2d ed. 1970), and has been approved by this court time and time again. United States v. Dawson, 467 F.2d 668 (8th Cir. 1972); United States v. Brown, 453 F.2d 101 (8th Cir. 1971), cert. denied, 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); United States v. Haley, 452 F.2d 398 (8th Cir. 1971), cert. denied, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972).

The instruction concludes with the following paragraph:

"[I]f the evidence in the case should leave you with a reasonable doubt whether the Defendant had the previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some officer or agent of the Government, then it is your duty to acquit him."

■ We are satisfied that the entrapment instruction, when considered along with the more general instructions concerning the presumption of innocence and the burden of proof, makes it clear that the government was required to prove beyond a reasonable doubt that appellant had not been entrapped.

### V.

■ Finally, appellant assigns as error the court's refusal to give his requested position instruction. The contention is without merit. In the final analysis, appellant's position was that he had been entrapped by Armstrong, and that defense had already been clearly submitted to the jury by the entrapment instruction.

Finding no merit in any of the contentions of appellant, the judgment of conviction is affirmed.

Affirmed.