UNITED STATES of America,
Appellee,

v.

John CONLEY, Jr., Appellant.

No. 74-1251.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Oct. 3, 1974.

James A. Bell, St. Louis, Mo., for appellant.

Thomas M. Vockrodt, Special Atty. Crim. Div., U. S. Dept. of Justice, St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant, John Conley, Jr., was convicted on one count of a two count indictment charging sales of heroin on July 21, 1973 and August 2, 1973. A

third count charging conspiracy to sell heroin was dismissed by the government prior to his first trial in which a mistrial was declared because the jurors could not agree on a verdict.

Appellant seeks reversal upon the grounds that (1) he was twice placed in jeopardy for the same offense; (2) the system of jury selection deprived black defendants of a right to a fair and impartial trial; (3) there was error in the reasonable doubt instruction; (4) the court erred in failing to provide the jury with a written copy of the instructions; (5) the court erred in allowing a witness to refresh his memory from an examination of the notes of another witness; and (6) the court erred in refusing to declare a mistrial because of the repeated references by government witnesses about murders, particularly with respect to killings in St. Louis over narcotics.

We reverse and remand for new trial because of the prejudice created by the remarks of the government witnesses with respect to murders in connection with narcotics. Brief comment will be made with respect to the other errors charged.

■ Appellant was first tried on December 17 and 18, 1973, the cause being submitted to the jury at 8:00 p. m. on the 18th. Later that evening the jury was discharged upon failure to arrive at a verdict. Appellant contends that the trial court abused its discretion in aborting the trial without his consent and for no apparent reason after the jury had deliberated only one and one-half to two hours. *See* United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). The government points out that without reaching the merits[1] of appellant's contention this court cannot consider the issue of double jeopardy because it was not raised until after trial. We agree that the claim is untimely.

In Ferina v. United States, 340 F.2d 837, 838 (8th Cir. 1965), we observed that "[c]onstitutional immunity from double jeopardy is a personal right which if not affirmatively pleaded by the defendant at the time of trial will be regarded as waived. Kistner v. United States, 332 F.2d 978 (8th Cir. 1964); Harris v. United States, 237 F.2d 274 (8th Cir. 1956); Barker v. State of Ohio, 328 F.2d 582 (6th Cir. 1964)." Here the defense of former jeopardy is raised for the first time on appeal. It cannot now be considered.

■ Appellant, prior to his voir dire of the jury, moved "to strike the entire panel because it is not representative of the Negro race." He pointed out to the court that there was only one black on the panel of twenty-eight called and the government could strike her peremptorily. After the jury was selected, appellant renewed his motion, calling the court's attention to the fact that the black had been striken peremptorily by the government and he was forced to be tried by an all-white jury. He argued that under the jury selection system then in effect the number of blacks were so few that the government could exclude all blacks from the case.

In his argument before us appellant contends that the St. Louis Division of the Eastern District of Missouri contains several counties where there are no blacks, which results in a jury panel with so few blacks that they can be peremptorily challenged. "Therefore, the system is geared for the systematic exclusion of blacks from sitting on petit juries where blacks are defendants * * *."

A similar challenge was made and rejected by our court in United States v. Pollard, 483 F.2d 929, 930 (8th Cir. 1973). In *Pollard* we noted that the Eastern District of Missouri, like all other districts in the Eighth Circuit,

---

[1]. At oral argument the attorney for the government stated it was his recollection that the jury had deliberated about four hours and that when counsel were advised in chambers of the proposed discharge of the jury, no objection was made by counsel for either party. No record was made in connection with the mistrial.

had adopted a plan for random jury selection which had been approved in accordance with the provisions of 28 U.S.C. § 1863. We further pointed out that under Swain v. State of Alabama, 380 U.S. 202, 221–224, 85 S.Ct. 824, 13 L.Ed. 2d 759 (1965), the striking of Negroes in a particular case is not sufficient to overcome the presumption that the prosecutor is using the government's challenges to obtain a fair and impartial jury. However, "* * * the presumption protecting the prosecutor may be overcome, and a prima facie case of discrimination established, by proof of a prosecutor's systematic exclusion of blacks from petit juries over an extended period of time." *Pollard* at 930. There, as here, no such proof was offered. Appellant's contention must therefore be rejected.

■ Appellant's present challenge to the reasonable doubt instruction is rejected because if there was error, and we do not say there was, it was not properly called to the trial court's attention before the jury retired to consider its verdict as required by Rule 30, F.R.Crim.P. *See* Friedman v. United States, 381 F.2d 155, 160–161 (8th Cir. 1967). Neither do we find there was plain error under Rule 52(b). F.R.Crim.P. *See* United States v. Atkins, 487 F.2d 257, 260 (8th Cir. 1973).

■■ We find no abuse of discretion on the part of the trial court in refusing appellant's request to submit the instructions to the jury in written form. Whether a written copy of the court's charge should be submitted to the jury is within the sound discretion of the trial judge. United States v. Blane, 375 F.2d 249, 255 (6th Cir. 1967); Oertle v. United States, 370 F.2d 719, 728–729 (10th Cir. 1967). Here the trial lasted less than two days and the issues were not complicated.

■ Appellant urges that the trial court erred in permitting witness Stewart (informant) to refresh his memory concerning a portion of a conversation he had with appellant by referring to government agent Guilbeaux's report. The propriety of permitting a witness to refresh his memory from a writing prepared by another largely lies within the sound discretion of the trial court. *See* United States v. Riccardi, 174 F.2d 883, 888–889 (3d Cir. 1949); McCormick, Law of Evidence, § 9 pp. 17–18 (2d Ed. 1972). No useful purpose is served in discussing further the issue here presented because it is not apt to reoccur in the same context.

■ Finally, appellant contends the trial court erred in refusing to declare a mistrial because of the repeated references by government witnesses to murders, particularly killings in St. Louis over narcotics. We agree.

The principal evidence offered by the government in support of its case against the defendant consisted of the testimony of undercover employee Stewart (informant) and Special Agent Guilbeaux of the Bureau of Narcotics and Dangerous Drugs.

Informant Stewart testified that after some preliminary negotiations with defendant he made the July 21 purchase of heroin from defendant at Regal Sports Lounge in St. Louis (Count I). The jury acquitted defendant on this count. Informant further testified that after a meeting with defendant on August 1 defendant set up a meeting the next day at Regal Sports Lounge where he indicated he would make a sale to informant and Special Agent Guilbeaux; August 2 informant and Special Agent Guilbeaux met defendant as arranged; however, defendant initially refused to make the heroin sale because of the alleged presence in the Lounge of an FBI agent but advised them to leave and return within twenty-five minutes; upon their return informant entered the Sports Lounge while Guilbeaux remained in the car, which was parked about twenty feet from the entrance; thereafter defendant and informant exited the Lounge and the transfer of heroin for $1300 took place in the doorway to the street; defendant and informant then proceeded to the parked automobile where they met with

Guilbeaux; at defendant's request Agent Guilbeaux wrote out his Ohio address and gave it to defendant. The next day when defendant was arrested, the Ohio address slip was found on his person. It was received in evidence.

Special Agent Guilbeaux corroborated informant Stewart's testimony in all material respects. He further testified that he observed defendant pass the heroin packet to informant Stewart on August 2 (Count II). The jury convicted defendant on this count.[2]

Defendant took the stand and denied selling heroin to Stewart or Guilbeaux and further stated that he never discussed narcotics with them at any time. He admitted knowing them socially and having seen them in the Sports Lounge on July 21 and August 2. He testified that he had been in the Missouri State Legislature eight years, was fifty years of age, and was a ward committeeman at the time of trial. He stated that he first met Stewart and Guilbeaux on election day, April 3, 1973.

Various witnesses were called by the defense who testified that defendant met with Stewart and Guilbeaux on July 20 and 21, 1973 at the Regal Sports Lounge but they heard no discussions concerning narcotics. Defendant also offered testimony as to his good character.

During the government's direct examination of informant Stewart, he on two occasions made reference to conversations with defendant in which shootings and killings were mentioned. The trial court sustained defendant's objections both times and on the first occasion directed the matter be stricken.

Later, during the government's direct examination of Special Agent Guilbeaux concerning conversations he had with defendant, the following occurred:

Q What did you discuss?

A We discussed the killings that was going on in the City at that time.

MR. BELL: Well, Your Honor, I'm going to object to that. I don't even think that is relevant and material; it has no bearing on any of the issues in this case.

THE COURT: Well, I will overrule the objection. Proceed.

Q (By Mr. Vockrodt) Did you discuss narcotics on that date?

A Yes, we did, about the killing all over narcotics and whatnot.

Counsel for the defendant, at the bench out of the hearing of the jury, then moved for mistrial because of the constant reference to killings in the city "because it implies the defendant had something to do with these killings." The court indicated it agreed that the testimony was not relevant but denied the motion for mistrial. Counsel further requested that the jury be instructed to disregard it. No further action was taken by the court.

We are convinced that the court abused its discretion in not granting the mistrial. The testimony was highly prejudicial. It came from a special agent of the government after the court had on two prior occasions sustained objections to testimony by a previous government witness with reference to killings. The testimony can hardly be characterized as an inadvertent slip of the tongue. In this connection we also note that the transcript of the testimony of informant Stewart and Special Agent Guilbeaux at the previous trial of defendant, which resulted in a hung jury, fails to disclose any mention by either of these witnesses of murder or killings over narcotics being discussed with defendant.

The reference to killings over narcotics by the special agent was highly inflammatory. Repeated reference to discussions with defendant over this subject implies that he may have had something to do with the killings. Under all the circumstances we are satisfied that the injection of this testimony into the rec-

---

2. Details of various conversations defendant had with informant Stewart and Special Agent Guilbeaux are omitted from our sum-mary of the evidence because the sufficiency of the evidence is not attacked.

ord was error and that the same was prejudicial.

We cannot say that the evidence of guilt was overwhelming or that it leaves us with no reasonable doubt that the jury would have reached the same result without hearing the inflammatory testimony. United States v. Allsup, 485 F.2d 287, 292 (8th Cir. 1973); *cf.* United States v. Olsen, 487 F.2d 77, 82–83 (8th Cir. 1973). Defendant's first trial resulted in a hung jury. In the instant case the jury found the defendant not guilty of Count I but guilty of Count II. The evidence is sufficient to support a finding of guilt on Count II but we cannot say with fair assurance that the verdict was not substantially swayed by the inflammatory testimony. Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Reversed and remanded for new trial.