**UNITED STATES of America, Appellee,**

v.

**Daniel A. NELSON, Appellant.**

**No. 92–1480.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1992.

Decided Jan. 22, 1993.

Rehearing and Rehearing En Banc
Denied Feb. 25, 1993.

Virginia G. Villa, Minneapolis, MN, argued (Katherian D. Roe and Virginia G. Villa, on the brief), for appellant.

Richard G. Morgan, Minneapolis, MN, argued (Thomas B. Heffelfinger and Richard G. Morgan, on the brief), for appellee.

Before McMILLIAN, MAGILL and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Daniel Allen Nelson appeals from a final judgment entered in the United States District Court[1] for the District of Minnesota finding him guilty, upon a jury verdict, of two counts of unlawful firearms possession in violation of 18 U.S.C. § 922 and 26 U.S.C. § 5861. The district court sentenced Nelson to the mandatory minimum term of 180 months imprisonment on count I and to a concurrent term of 120 months imprisonment on count II. For reversal,

Nelson argues (1) the district court abused its discretion denying his motion for a mistrial and (2) the evidence was insufficient to support the jury's verdict that he knowingly possessed a sawed-off shotgun. For the reasons discussed below, we affirm the judgment of the district court.

## BACKGROUND

A joint, undercover investigation by the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) and the Dakota County, Minnesota, Sheriff's Department, led to the arrest of Nelson on February 1, 1990. ATF agent Hourihan learned from a confidential informant that Nelson, an eight-time convicted felon, was involved in criminal activity. Hourihan asked the informant to arrange a meeting with Nelson. At the meeting which took place on January 24, 1990, Hourihan, working undercover, and Nelson talked about various criminal activities including a "drug rip-off."[2]

Approximately one week later, agent Hourihan arranged a second meeting with Nelson, which took place on January 30, 1990. At this meeting, Hourihan and Nelson discussed further details about conducting a drug rip-off and the need for firearms was expressed by Hourihan.[3] At the second meeting Nelson also indicated to Hourihan that he had a $20,000.00 boat that Hourihan could buy at a low price.

Hourihan indicated to Nelson that he had a friend who would be interested in the boat, and later introduced undercover Dakota County Deputy Stephen Theriault to Nelson as a potential buyer. After finding that the boat had been stolen and as a result of the intertwined investigations by ATF and the Dakota County Sheriff's Department, a search warrant was executed on Nelson's apartment on February 1, 1990. Present in the apartment at the time of the search were Darla Nelson, Nelson's

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

2. The "drug rip-off" discussed involved the breaking into a house and stealing either narcotics, cash or other assets from a drug dealer.

3. At trial Hourihan testified that defendant indicated that, once he got the word from Hourihan, he would be ready with the "hardware," stating "I have the firepower, you say when."

wife, and two of their children. In the course of the search, law enforcement officers found a sawed-off shotgun under Nelson's bed. At that time Darla Nelson was questioned by Officer William White and she stated that she did not know that Nelson had a gun under his bed or words to that effect. The next day, speaking with Nelson's probation officer, Darla Nelson referred to the shotgun and again stated that she did not know the gun was there.[4]

On February 1, 1990, Nelson was arrested by Dakota County, Minnesota, law enforcement officers on charges unrelated to this case.[5] On May 22, 1991, a federal indictment was filed charging Nelson with possessing a sawed-off shotgun after previous convictions for four violent felonies and possession of an unregistered sawed-off shotgun.

Prior to trial the government moved that it be allowed to present evidence of four of Nelson's prior felony convictions. The district court, however, determined that the government could submit evidence of two prior felonies. State Probation Officer Stephen Nelson testified that Nelson was indeed a felon. Over Nelson's objection, ATF agent Kouboshek testified as an expert regarding the interstate travel of the shotgun, its status as a firearm, and the effect of sawing-off a shotgun. He testified that in 1934, when the federal government began to the regulate firearms the government determined that firearms like sawed-off shotguns were classified as "gangster-type" weapons. At this point the district court interrupted the agent's answer and struck the reference to "gangster-type" weapons and instructed the jury to disregard that testimony.

During direct examination Hourihan also testified that he received information from a confidential informant that Nelson was on the streets and was actively involving himself in various criminal activities. Defense counsel objected to this testimony

and the district court found that the statement was inappropriate and inadmissible hearsay. The district court then gave a curative instruction, but did not strike the testimony. The government then asked Hourihan to identify the confidential informant. Hourihan replied that he could not reveal the informant's identity because it was departmental policy not to disclose information regarding informants in order to protect the informant, his or her family and anyone associated with the informant. Defense counsel objected to this answer, but the district court overruled the objection.

On cross-examination, defense counsel asked Hourihan whether the informant was "one bad guy", to which Hourihan responded that the informant's felony record was no worse than Nelson's. The district trial court immediately struck the response from the record as a volunteered statement and warned Hourihan not to make a response like that again.

On redirect examination, the government asked Hourihan whether he believed Nelson's statements were only "big talk" as suggested by defense counsel. Hourihan responded that he felt Nelson's statements were much more than "big talk" because "between the first and second meetings there had been some activity where some property had changed hands, I knew that there was more than just talk going on, there was some criminal activity afoot." At this point, defense counsel objected and moved for a mistrial based on Hourihan's repeated references to Nelson's other criminal activities. The district court admonished the government to move past this line of inquiry quickly but denied the motion for a mistrial.

On September 11, 1992, the jury found Nelson guilty on both counts of the indictment, the district court sentenced Nelson to 180 months imprisonment and five years supervised release on count I and 120

---

4. At trial Hourihan testified that the gun had been dusted for fingerprints and that no identifiable prints were raised from the firearm. Additionally, Darla Nelson testified that the gun had been found by her son while playing in the woods behind their apartment and that she put

it in a paper sack and hid it under the bed in the living room.

5. In state court defendant was charged with insurance fraud, stolen property, and drug trafficking.

months imprisonment and three years supervised release on count II, the terms to run concurrently, and a special assessment of $100.00. This appeal followed.

## DISCUSSION

### I.

Nelson first argues that the district court abused its discretion in denying his motion for a mistrial. He argues that evidence of character, disposition and reputation is entirely closed to the government in its case-in-chief. He also argues that although such facts might logically be probative that a criminal defendant is by propensity a probable perpetrator of the crime, its exclusion tends to prevent confusion of issues, unfair surprise and undue prejudice. He argues that felon-in-possession cases are always difficult because the defendant by definition, is a convicted felon. Therefore, Nelson argues that because inadmissible bad character evidence improperly influenced the jury, the district court should have granted his motion for a mistrial.

The government argues the district court properly determined that the testimony of the government witnesses did not warrant a mistrial. The government contends that the district court struck the testimony it viewed as potentially improper and provided curative instructions to the jury, even absent defense objection to the testimony. It further argues that even if the testimony at issue was improper, any error was harmless in light of the overwhelming evidence of guilt. Thus, the government argues a mistrial was not warranted. We agree.

▪ The standard of review applicable to denial of a motion for mistrial is abuse of discretion. *United States v. Muza,* 788 F.2d 1309, 1312 (8th Cir.1986) (*Muza*); *United States v. Reed,* 724 F.2d 677, 679–80 (8th Cir.1984) (*Reed*); *see United States v. Leisure,* 844 F.2d 1347, 1362 (8th Cir. 1988) (*Leisure*) (same standard where improper question alleged). The district court "[i]s in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *Williams v.*

*Mensey,* 785 F.2d 631, 637 (8th Cir.1986) (quoting *Harris v. Zurich Insurance Co.,* 527 F.2d 528, 531 (8th Cir.1975)).

▪ The admission of allegedly prejudicial testimony is ordinarily cured by an instruction to the jury to disregard the testimony. *Leisure,* 844 F.2d at 1362; *Muza,* 788 F.2d at 1312. Nonetheless, "[a] reviewing court must determine with fair assurance whether, in spite of the instruction, the verdict was substantially swayed by the error." *Muza,* 788 F.2d at 1312. Furthermore, we determine the prejudicial effect of any allegedly improper testimony on the defendant's right to a fair trial by examining the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of the Nelson's guilt. *United States v. Reed,* 700 F.2d 638, 646 (11th Cir.1983) (citation omitted).

As to the factors involving the strength of the evidence of guilt, substantial evidence of guilt can lead to a finding that the allegedly improper testimony was harmless. *Muza,* 788 F.2d at 1312 (substantial evidence existed where testimony of accomplice corroborated; harmless error found); *see United States v. Hernandez,* 779 F.2d 456, 461 (8th Cir.1985) (corroborated witness testimony providing circumstantial evidence of defendant's guilt; conviction affirmed despite prosecutorial misconduct).

▪ In the present case, the testimony of government agents did not require declaration of a mistrial and did not deny Nelson a fair trial. First, the district court aggressively acted both on its own and upon request of defense counsel to strike the allegedly improper testimony, instruct the jury to disregard the testimony, or give curative instruction. Second, the evidence of Nelson's guilt was substantial, corroborated, and essentially uncontradicted.

The evidence presented by the government established that on January 30, Nelson admitted to an undercover agent that he had a firearm available to use in committing a "drug rip-off." A sawed-off shotgun was found in his apartment under his bed during execution of a search war-

rant on February 1. Nelson shared the apartment with his wife and children. Although his wife testified that on the day that the search warrant was executed, one of their children had found the shotgun in the woods behind the apartment, the government fully impeached her testimony. Police Officer White testified that during the execution of the search warrant, Darla, when confronted with the shotgun, stated that "she didn't know he had a gun there, under the bed," or words to that effect.

Probation Officer Stephen Nelson also testified about a telephone conversation he had with Darla the day after the execution of the search warrant in which she stated "I didn't know the gun was there." This rebuttal testimony, remained effectively uncontradicted. Therefore, we find that any residual prejudice surviving the district court's aggressive curative actions was harmless given the substantial evidence of Nelson's guilt. Thus, we hold that the district court did not abuse its discretion in denying the motion for mistrial.[6]

## II.

Nelson next argues that the evidence presented by the government was insufficient to support the jury's verdict. He argues that the evidence of whether he knew the shotgun was in his apartment was equivocal. Nelson argues that his wife testified that their son found the shotgun after he left the house that day and that she put it underneath the bed. He also contends that Hourihan testified that during their second meeting he made some

comments which sounded like Nelson might have a gun or might have access to a gun.

Thus, Nelson argues that during the second meeting there was beer-drinking going on and a lot of "big talk" by everyone involved and that Hourihan could not remember the exact words that Nelson used. He further argues that the shotgun was found disassembled and no identifiable fingerprints were recovered. Therefore, he argues the evidence was insufficient to support the jury's verdict because no reasonable fact-finder could have found that he Knowingly possessed the shotgun.

The government argues that the evidence presented at trial was more than sufficient to support the jury's finding that Nelson knowingly possessed a sawed-off shotgun and that the shotgun was not registered as required. The government further argues that, contrary to Nelson's contention Hourihan's testimony was that once he explained to him about the need for firearms, Nelson responded "you give me the word, I am ready to go, I have got the hardware, I have got the firepower." The government also argues that his wife's testimony was thoroughly impeached by the government's witnesses which in effect left the government's evidence uncontradicted. We agree.

In reviewing sufficiency of evidence claims, we view the evidence in the light most favorable to the government. *United States v. Whitfield*, 874 F.2d 591, 592 (8th Cir.1989); *United States v. Resnick*, 745 F.2d 1179, 1185–86 (8th Cir.1984). We must draw from the facts all reasonable inferences in favor of the government.

---

6. . Nelson also argues that the district court erred in not *sua sponte* declaring a mistrial. Nelson essentially contends that the remarks at issue were not only improper but also made in bad faith by government witnesses. The standard of review applicable to an allegation that the district court erred in not granting a mistrial, absent a defense motion, is plain error. Fed. R.Crim.P. 52(b); *United States v. Maples*, 754 F.2d 299, 301 (8th Cir.1985); *United States v. Cable*, 446 F.2d 1007, 1009 (8th Cir.1971). Moreover, "[w]e have repeatedly held that the plain error rule should be applied with caution and should be invoked only to avoid a plain miscarriage of justice." 446 F.2d at 1009; *United States v. Levin*, 443 F.2d 1101 (8th Cir.) *cert.*

denied, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 260 (1971); *United States v. Reed*, 446 F.2d 1226 (8th Cir.1971); *United States v. Wenner*, 417 F.2d 979 (8th Cir.1969), *cert. denied*, 396 U.S. 1047, 90 S.Ct. 700, 24 L.Ed.2d 692 (1970). Thus, we hold that although some of the remarks made by the government witnesses were improper, they were not elicited in bad faith by the government, rather they were volunteered statements. Additionally, no prosecutorial bad faith is alleged here, and any prejudice resulting from the government witnesses remarks was sufficiently purged by the district court's extensive curative instructions to the jury. Therefore, we find no plain error.

United States v. Roberts, 848 F.2d 906, 908 (8th Cir.), cert. denied, 488 U.S. 931, 109 S.Ct. 322, 102 L.Ed.2d 340 (1988); United States v. Robinson, 782 F.2d 128, 129 (8th Cir.1986). Furthermore, we must resolve all evidentiary conflicts in favor of the government. Smalley v. United States, 798 F.2d 1182, 1188 (8th Cir.1986). The fact-finder, not the appellate court, has the duty to resolve any conflicts in testimony and judge the credibility of the witnesses. United States v. Rankin, 902 F.2d 1344, 1346 (8th Cir.1990).

The evidence need not exclude every reasonable hypothesis other than guilt, but simply must be sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty. United States v. Paul, 810 F.2d 774, 775 (8th Cir. 1987); United States v. La Guardia, 774 F.2d 317, 319 (8th Cir.1985). Moreover, the evidence to support a criminal conviction is sufficient, as a matter of law, if "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Brown, 763 F.2d 984, 989 (8th Cir.), cert. denied, 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985). If the evidence rationally supports two conflicting hypotheses, this Court cannot disturb the conviction. United States v. O'Connell, 841 F.2d 1408, 1424 (8th Cir. 1988), cert. denied, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). Finally, the government can prove that the defendant constructively possessed a firearm in violation of 18 U.S.C. § 922, by showing "that the defendant either actually or constructively possessed the firearm." United States v. Woodall, 938 F.2d 834, 837 (8th Cir.1991).

After carefully reviewing the evidence presented in the light most favorable to the government, we conclude that there was sufficient evidence to support the jury's finding that Nelson knowingly possessed the sawed-off shotgun.

Accordingly, the judgment of the district court is affirmed.