# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-1553

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota |
| Joshua A. Waldman, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted:  October 8, 2002
Filed:  November 20, 2002

_____

Before MURPHY, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Joshua A. Waldman was convicted by a jury of carjacking, in violation of 18 U.S.C. § 2119, and of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).  The district court[1] sentenced him to 180 months for carjacking and 84 months for the firearm violation, to be served consecutively. Waldman appeals his conviction and his sentence.  We affirm.

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas, sitting by designation.

# I.

On the evening of April 22, 2000, Lieutenant David Panzer, Jr. of the Pierre police department observed a vehicle fail to yield at an intersection. Panzer stopped the vehicle, learned that its driver was Waldman, and noticed an odor of alcohol. He administered a sobriety test to Waldman and then arrested him for "zero-tolerance DUI," a charge used for drivers under the age of 21 who have consumed alcohol. Panzer handcuffed Waldman with his hands behind his back, patted him down, and then placed him in the rear passenger side of his police car. The rear seat was separated from the front by a solid plexiglass screen on the driver side and a wire cage on the passenger side.

While Panzer was driving toward the jail, Waldman was able to move his handcuffed arms to the front of his body without being detected and suddenly drew a concealed gun and yelled, "Don't fuckin' move cop." Waldman pointed the gun at Panzer through the wire cage separating the front and rear seats and told him where to drive, finally ordering him to drive to a gravel pit outside of town. On the way out of town, Waldman kept his weapon pointed at the lieutenant's head and threatened him with death and grievous injury. The threats included statements such as "I swear to God, . . . got a 45 fucking magnum and blow [sic] your fucking head right off," "I don't wanna fucking kill you, but I swear to fucking God, I will," and "motherfucking trigger's got five pounds of pressure, I got three on the motherfucker right now."

Once they arrived at the gravel pit, Waldman ordered Panzer to stop the car behind a pile of gravel and to press his head to the barrel of the gun. He warned Panzer, "You better do the fucking thing, this . . . fucker is pointed right at your fucking eye." Panzer, who was afraid he was about to be killed, managed to open the car door and roll out of the car onto the ground. From there he drew his weapon and fired twice into the back seat. Waldman then threw his gun out of the car and

surrendered. His gun was later found about eight feet from the car; it was loaded with six hollow point bullets and its hammer was cocked.

Waldman was first charged with state crimes, and a jury found him guilty of driving under the influence and consumption of alcohol by a minor, not guilty of attempted first degree murder, and not guilty by reason of insanity of the remaining charges (aggravated assault, kidnapping, commission of a felony while armed, attempted escape, and carrying a pistol or revolver without a permit). He was subsequently indicted by a federal grand jury for carjacking and for using a firearm during and in relation to a crime of violence. At the federal trial, the government presented witnesses who testified that Waldman had expressed to them his dislike for police officers and his desire to kill one. There was also evidence that Waldman's gun was in working order and that the hammer had to be cocked manually before it could be fired. Waldman again raised an insanity defense and contended that he lacked the requisite criminal intent to be convicted of carjacking under § 2119.

In its rebuttal case, the government called two psychiatrists and a psychologist who had examined Waldman and found him to have been sane at the time he commandeered the police vehicle. Dr. Ronald Franks also testified that Waldman had told him that he had not shot Panzer on the way to the gravel pit because he was not able to aim his gun properly through the wire screen. During the course of his testimony, Dr. Franks also volunteered the statement that Waldman "had an intent to kill a policeman." Defense counsel objected, and the court sustained the objection, struck that portion of the testimony, and instructed the jurors to disregard the comment, reminding them that the question of intent was for them to decide. No motion for a mistrial was made.

Waldman was convicted on both counts and later came before the district court for sentencing. It imposed a three level enhancement for an official victim under § 3A1.2 of the sentencing guidelines and declined to award a two level reduction for

acceptance of responsibility under § 3E1.1. See United States Sentencing Commission, Guidelines Manual, §§ 3A1.2, 3E1.1 (Nov. 2001) [USSG]. Waldman's criminal history category of IV and his adjusted offense level of 31 resulted in a guideline range of 151 to 188 months for carjacking and a mandatory 84 months for use of a firearm. See id. Ch.5, Pt.A; id. § 2K2.4(a)(2). The court sentenced him to 180 months on the carjacking count and 84 months on the firearm count, to be served consecutively.

On appeal, Waldman challenges his convictions and his sentence. He argues that the evidence was insufficient to support the carjacking conviction, that the district court should have sua sponte declared a mistrial after Dr. Franks' comment about Waldman's intent, and that the district court erred both in applying the official victim enhancement and in declining to grant a reduction for acceptance of responsibility.

## II.

### A.

Waldman contends that the evidence was insufficient to prove that he "acted with the intent to cause death or serious bodily harm," the state of mind required for conviction under § 2119. United States v. Wright, 246 F.3d 1123, 1126 (8th Cir. 2001). In considering the sufficiency of the evidence on appeal, we review "the evidence in the light most favorable to the verdict, allowing the government all reasonable inferences that may be drawn from the evidence." United States v. Eide, 297 F.3d 701, 704 (8th Cir. 2002). This standard of review does not permit us to weigh the evidence or assess the credibility of witnesses. See id. at 705. The verdict must be upheld "if there is substantial evidence that would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." Wright, 246 F.3d at 1126.

A necessary element for conviction under § 2119 is "the intent to cause death or serious bodily harm."  18 U.S.C. § 2119 (2000).  In a case such as this one where "the driver surrendered or otherwise lost control over his car without the defendant attempting to inflict, or actually inflicting, serious bodily harm, . . . the Government [must] prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car."  Holloway v. United States, 526 U.S. 1, 11–12 (1999).  Contrary to Waldman's contention, however, criminal intent may be inferred from circumstantial evidence.  See United States v. Warbonnet, 750 F.2d 698, 700 (8th Cir. 1984) (per curiam).

The government presented a great deal of evidence on the issue of Waldman's intent.  The jury could have inferred from the threats he made to Panzer that he was ready to kill him unless he followed instructions and surrendered control over the car. Waldman warned Panzer, for example, that he would "shoot you in the fucking face" and "I don't wanna fucking kill you, but I swear to fucking God, I will."  One of the passengers in Waldman's car when it was stopped testified that Waldman had said that he wanted to "kill a Pierre police officer and become famous."  There was evidence that Waldman's gun was loaded, and Panzer testified that Waldman had cocked his gun and kept it aimed at the back of the officer's head when he took control of the car.  Dr. Franks testified that Waldman had told him that he had been prepared to use a weapon that day but that he had not shot Panzer because he had not been able to get a proper angle on him.  After reviewing the evidence, we cannot conclude that "'no reasonable jury could find beyond a reasonable doubt,'" Eide, 297 F.3d at 704 (quoting United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996)), that Waldman had the specific intent seriously to harm or kill Lieutenant Panzer if it had been necessary to complete the taking of the car.

B.

Waldman also contends that the district court should have declared a mistrial after Dr. Franks volunteered that he had "had an intent to kill a policeman." Waldman argues that Dr. Franks was testifying as an expert and this statement therefore violated Federal Rule of Evidence 704(b), which prohibits an expert from stating an opinion as to whether a defendant had the mental state constituting an element of the crime. Waldman argues that he is entitled to a reversal like the defendant in United States v. Boyd, 55 F.3d 667 (D.C. Cir. 1995), where an expert testified to intent. The government does not deny that Dr. Franks' statement was improper, but it argues that in light of the district court's curative instructions and the other substantial evidence of Waldman's guilt, the error was harmless and did not warrant a mistrial.

Our standard of review when no motion for a mistrial was made at trial is only for plain error. See United States v. Boyd, 180 F.3d 967, 983 (8th Cir. 1999); United States v. Nelson, 984 F.2d 894, 898 n.6 (8th Cir. 1993). We will reverse for plain error "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." United States v. McNeil, 184 F.3d 770, 777 (8th Cir. 1999) (quoting Cross v. Cleaver, 142 F.3d 1059, 1067 (8th Cir. 1998)). This form of review "is extremely narrow and is limited to those errors which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." United States v. Beck, 250 F.3d 1163, 1166 (8th Cir. 2001).

This case is unlike Boyd, on which Waldman relies. There, the expert's testimony came in response to a hypothetical question from the prosecutor specifically designed to elicit an opinion on intent, the court gave no corrective instruction to the jury, and the government's other evidence of intent was "questionable." Boyd, 55 F.3d at 670, 672. In this case, Dr. Franks' comment was

-6-

an unsolicited remark that the prosecutor did not seek to exploit and the district court immediately sustained the defense objection, ordered the statement stricken, and instructed the jurors that they alone were to determine the issue of intent. Cf. Nelson, 984 F.2d at 897 ("The admission of allegedly prejudicial testimony is ordinarily cured by an instruction to the jury to disregard the testimony."). Moreover, there was considerable evidence of Waldman's intent, such as the stream of threats made to Panzer, the fact that his gun was loaded and manually cocked, and his statements that he wanted to "kill a Pierre police officer and become famous" but had not been able to get his weapon aimed at the proper angle to kill Panzer. Cf. id. ("[S]ubstantial evidence of guilt can lead to a finding that the allegedly improper testimony was harmless."). We conclude that the district court's failure to declare a mistrial sua sponte did not prejudice Waldman's substantial rights or result in a miscarriage of justice.

## C.

Waldman challenges the district court's application of the official victim enhancement. We review a district court's factual findings at sentencing for clear error and its application of the guidelines de novo. See United States v. Moore, 242 F.3d 1080, 1081 (8th Cir. 2001). The enhancement for an official victim applies when "during the course of the offense . . ., the defendant . . ., knowing . . . a person was a law enforcement . . . officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." USSG § 3A1.2(b) (2001). This section "applies in circumstances tantamount to aggravated assault against a law enforcement . . . officer." Id. § 3A1.2, cmt. n.5. Waldman argues that he did not create a substantial risk of bodily injury to Lieutenant Panzer, but there was sufficient evidence in support of the district court's finding to the contrary. Waldman threatened to kill Panzer while pointing a cocked and loaded gun to the back of his head for an extended period of time.

D.

Waldman also argues that the district court erred by declining to grant a reduction for acceptance of responsibility. Such a reduction is appropriate if "the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). The defendant has the burden to show he is entitled to the reduction. United States v. Arellano, 291 F.3d 1032, 1034 (8th Cir. 2002). The issue "'is a factual question which depends largely on credibility assessments by the sentencing court,'" and we will only reverse the district court's determination "if it is so clearly erroneous as to be without foundation." United States v. Santos, 235 F.3d 1105, 1108–09 (8th Cir. 2000) (quoting United States v. Yell, 18 F.3d 581, 583 (8th Cir. 1994)); see also USSG § 3E1.1, cmt. n.5 ("[D]etermination of the sentencing judge is entitled to great deference on review."). Waldman is correct that a defendant who proceeds to trial on an insanity defense "may nevertheless qualify for an acceptance-of-responsibility reduction." United States v. Barris, 46 F.3d 33, 35 (8th Cir. 1995). In order to obtain the reduction, however, he must show that he is entitled to it, and we cannot say on this record that the district court clearly erred in finding that Waldman did not accept responsibility for his offenses.

E.

For these reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-