# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1611

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jhanmay Molina-Perez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 18, 2009
Filed: February 23, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Appellant Jhanmay Molina-Perez of conspiring to manufacture marijuana and maintaining a place to manufacture marijuana. The district court[1] sentenced Appellant to 135 months' imprisonment. On appeal, Appellant argues that the jury had insufficient evidence to convict him of the crimes charged and that the district court erred in allowing evidence of firearms, refusing to grant a mistrial, and incorrectly calculating his guidelines range. We affirm.

_____

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

I.

In 2006, Appellant began renting farm property in rural Missouri from Dana Fairley and her boyfriend, Arturo Cabral, who had purchased the property from Doug and Camilla Roberts. Mr. and Mrs. Roberts also owned the property neighboring the rented property. Throughout Spring 2006, Mr. and Mrs. Roberts observed a number of men, whom Appellant referred to as "his people" and "his workers," farming the property. At trial, Mr. Roberts testified that he observed Appellant on the property approximately once a week, usually on the weekend. Mr. Roberts also testified that he himself aided the workers in planting sweet corn on the property, and that he observed men on the property pumping water out of a nearby pond in order to water the field. Despite this work, the corn was never harvested.

On September 6, 2006, Mrs. Roberts called the police after hearing gun shots coming from Appellant's property. Upon investigating the property, police discovered two dead bodies, as well as a football-size field of marijuana—3,356 plants by one officer's count—growing among dead sweet corn. Upon further investigation of the property, officers observed pipes running from a nearby pond, as well as from a fertilizer-stained bathtub in the house. Both sets of pipes led to the field where the marijuana was growing. A Missouri Highway Patrol Trooper testified that these pipes were readily visible in some areas. Later in the day, detectives investigated the property and found a number of firearms and ammunition in and around the house, as well as large amounts of fertilizer.

Following these events, a grand jury returned a one-count indictment charging Appellant with attempting to manufacture marijuana. The Government brought a number of superseding indictments, with the final, fourth superseding indictment charging Appellant with conspiracy to manufacture marijuana, murder, attempt to manufacture marijuana, maintaining a place to manufacture marijuana, and possessing a firearm in furtherance of a drug-trafficking offense. Prior to trial, the Government

dropped the murder and firearm counts against Appellant and at trial, dismissed the attempt charge.

Appellant filed two motions in limine, arguing that evidence of firearms was irrelevant and overly prejudicial. The district court denied Appellant's motions, but instructed the Government that its witnesses were not to discuss the homicides that took place on the property. At trial, the Government introduced a number of the firearms and ammunition recovered during the investigation of Appellant's property as well as Mrs. Roberts' testimony that she heard shots fired.

In addition to evidence detailing the events leading up to and immediately following the Government's investigation of the property, a number of witnesses testified at trial as to their interactions with Appellant. Rosa Partida testified that she frequently had seen Appellant at a Kansas City night club. Partida testified that during Summer 2006, she was at the night club and overheard Appellant talking in Spanish about how his marijuana plants were growing well. The Government also called Onel Jiminez, Appellant's former boss, who testified that Appellant had quit working for him after four or five months because Appellant needed more money. Subsequently, Appellant hired Jiminez to install a heating and cooling system on the property that Appellant was renting. Jiminez testified that Appellant was bragging about how he was now making plenty of money and was "set for life."

Finally, Special Agent Scott Pickle testified that he analyzed phone records and found that there were 105 phone calls between Appellant and Jose Beritan, a man the neighbors had identified as having been on the rented property. It was subsequently determined, however, that Agent Pickle's testimony came from documents not in evidence and that the admitted evidence showed only one phone call between Beritan and Appellant. To remedy this error, the district court issued a curative instruction to the jury and permitted defense counsel to argue during closing that the Government witness was erroneous in stating that 105 calls took place.

The jury found Appellant guilty of both conspiring to manufacture and maintaining a place to manufacture marijuana. The district court calculated an advisory guidelines range, applying a four-level enhancement under U.S. Sentencing Guidelines Manual § 3B1.1(c) (2009) for Appellant's leadership role in the conspiracy to manufacture marijuana and a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm. The court then considered the factors articulated in 18 U.S.C. § 3553(a) and sentenced Appellant to 135 months' imprisonment.

## II.

On appeal, Appellant argues that (A) there was insufficient evidence for his conviction; (B) the district court erred in admitting firearms evidence; (C) the district court erred in refusing Appellant's request for a mistrial; and (D) the district court erred in calculating Appellant's guidelines range. For the following reasons, we affirm the judgment of the district court.

## A.

In his first claim, Appellant argues that there was insufficient evidence to support his conviction. "We review *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." United States v. Birdine, 515 F.3d 842, 844 (8th Cir. 2008). This is a strict standard, permitting reversal "only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt." United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008). Appellant fails to meet this burden on both convictions.

To obtain a conviction for conspiracy, the Government must prove beyond a reasonable doubt that there was an agreement to achieve an illegal purpose, that

Appellant knew of the agreement, and that Appellant knowingly participated in the agreement. United States v. Torres, 552 F.3d 743, 746 (8th Cir. 2009). Appellant contends that there is insufficient evidence on this count because the Government's evidence merely piles "inference upon inference."

Although the Supreme Court has stated that "charges of conspiracy are not to be made out by piling inference upon inference," Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943), this is not such a case. Direct Sales and cases like it do not take from the jury the power to make inferences when the Government has presented evidence to support those inferences. The jury in this case heard, among other things, evidence that Appellant leased the property on which investigators found over three thousand marijuana plants along with various farming tools, that Appellant visited the property weekly, that Appellant had men on the farm whom he referred to as "his workers," that Appellant was aware of farming on the land, and that Appellant had been bragging about his successful marijuana production at a local night club.[2] Given the evidence that the Government presented, we have no doubt that there were sufficient grounds on which the jury could find Appellant guilty of conspiracy beyond a reasonable doubt.

To obtain a conviction for maintaining a place to manufacture marijuana, the Government must prove beyond a reasonable doubt that Appellant "manage[d] or

---

[2] Appellant argues that Partida's testimony cannot be used to support a conviction because it is unlikely she actually heard anything at the night club because of loud music. We reject this argument, as it is no more than a plea for us to second guess Partida's credibility. While Appellant is permitted to attempt to discredit Partida's testimony at trial, such an argument is not persuasive on appeal. See United States v. Brown, 422 F.3d 689, 692 (8th Cir. 2005) ("[W]e have long held that the jury 'is always the ultimate arbiter of a witness's credibility,' and thus we 'will not disturb the jury's findings' on appeal.") (citation omitted); United States v. Porter, 409 F.3d 910, 915 (8th Cir. 2005) ("We enjoy no greater vantage point on the appeal than did the jury at trial, and we have no right to usurp the jury's role to judge the facts and make credibility findings.").

controll[ed] any place, whether permanently or temporarily . . . and knowingly and intentionally rent[ed], lease[d], profit[ed] from, or [made] available for use . . . the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a)(2). The evidence that Appellant rented the property, that he referred to the men farming the property as "his workers," and that he bragged about the success of his marijuana production convinces us that a reasonable jury could find Appellant guilty beyond a reasonable doubt of maintaining a place to manufacture marijuana.

B.

In his second claim on appeal, Appellant argues that the district court erred in refusing to exclude evidence of firearms on the property. We review the district court's evidentiary ruling for abuse of discretion. United States v. Jones, 110 F.3d 34, 35 (8th Cir. 1997).

Appellant alleges that the Government's firearm evidence was irrelevant and overly prejudicial. But we have long held that firearms are "tools" in the drug trade and can be admissible as evidence of a drug conspiracy. See, e.g., United States v. Jordan, 260 F.3d 930, 933–34 (8th Cir. 2001); United States v. Dierling, 131 F.3d 722, 732 (8th Cir. 1997); United States v. Logan, 54 F.3d 452, 454 (8th Cir. 1995). Given this long-held belief in the probative nature of firearm evidence in drug cases and the high degree of discretion that district courts possess in making evidentiary rulings, particularly in conspiracy trials, United States v. Searing, 984 F.2d 960, 965 (8th Cir. 1993), we conclude the district court did not abuse its discretion in permitting such evidence.

-6-

Appellant next argues that the district court should have granted a mistrial because of a Government witness's reference to a "fatality" on Appellant's property and because of Agent Pickle's improper phone-record testimony. We review the district court's refusal to grant a mistrial for abuse of discretion. United States v. Espinosa, 585 F.3d 418, 428 (8th Cir. 2009).

First, the district court did not abuse its discretion in refusing to grant a mistrial because of an improper reference to homicide. The single reference to homicide occurred when defense counsel cross-examined a witness regarding a crime-scene diagram, and the witness used the word "fatality" in response to defense counsel's question. It was a singular, benign reference that did not link Appellant to the deaths and in no way caused him to suffer prejudice. Our decision in United States v. Conley, 503 F.2d 520 (8th Cir. 1974), on which Appellant relies, is not to the contrary. In Conley, we reversed the district court's denial of a mistrial, finding that the Government's *repeated* references to homicide were "highly inflammatory," requiring reversal for a new trial. Id. at 523–24. The case at hand involves testimony more akin to, as the Conley court called it, "an inadvertent slip of the tongue," id. at 523, rather than the repeated and direct references the Conley court found warranted a new trial. Given the wealth of evidence introduced by the Government, we cannot find that this single reference prejudiced Appellant so as to require a mistrial.

Second, the district court did not abuse its discretion in refusing to grant a mistrial because of Agent Pickle's phone-record testimony. As previously indicated, on direct examination, Agent Pickle testified that between September 1 and September 7, 2006, there were 105 phone calls made between Appellant and Jose Beritan, an alleged co-conspirator. During cross-examination, counsel determined that Agent Pickle's testimony regarding the 105 calls came from sources that were not in evidence. Appellant's trial counsel then requested a mistrial, which the district court

denied. Then, in the presence of the jury, the district court issued a curative instruction, stating that "there was one call between the defendant and Joe Beritan between September the 1st and September the 7th of 2006. . . . Not 105 calls as Special Agent Pickle testified to." At closing arguments, Appellant's trial counsel reaffirmed to the jury that the evidence only showed one call, not 105, and used the misstatements to attack the credibility of the Government's case as a whole.

Generally, improper statements are cured by remedial instructions from the district court. United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993). On appeal, we review denial of a mistrial to determine "'whether, in spite of the instruction, the verdict was substantially swayed by the error.'" Id. (citation omitted). When making this determination, we address the sufficiency of the curative instruction and balance the strength of the Government's case against any prejudice suffered by Appellant. United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005). Substantial evidence of guilt generally precludes us from reversing the district court, as any error would be harmless. See United States v. Muza, 788 F.2d 1309, 1313 (8th Cir. 1986). Here, the district court not only gave a prompt remedial instruction to the jury, but permitted Appellant's counsel to argue in closing that Agent Pickle's testimony was incorrect. Further, as detailed above, the Government presented substantial evidence connecting Appellant to the land on which the marijuana was grown. Therefore, we cannot conclude that the district court abused its discretion.

D.

In his final claim, Appellant argues that the district court improperly calculated his sentence. Appellant's base offense level was twenty-six and he had a criminal history category of II. The district court then added the relevant enhancements and arrived at an offense level of thirty-two, resulting in a guidelines range of 135 to 168 months. After considering the factors articulated in 18 U.S.C. § 3553(a), the district court sentenced Appellant to 135 months' imprisonment. On appeal, Appellant argues that (1) the district court erred in applying a four-level enhancement under U.S.S.G.

§ 3B1.1(a) for Appellant's leadership role in the offense; (2) the district court erred in applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm; and (3) the district court's sentence was unreasonable under § 3553(a).  We review the district court's factual findings for clear error, United States v. Yah, 500 F.3d 698, 702 (8th Cir. 2007), and review all sentences, whether inside or outside of the guidelines, for abuse of discretion, Gall v. United States, 552 U.S. 38, 51 (2007).

First, the district court was not clearly erroneous in finding that Appellant had a leadership role in the offense.  We give a broad reading to the terms "organizer" and "leader" as used in § 3B1.1.  United States v. Garcia, 512 F.3d 1004, 1005 (8th Cir. 2008).  It is not necessary for the Government to show that Appellant was the only leader or that he led all of the other participants.  United States v. Bahena, 223 F.3d 797, 804 (8th Cir. 2000).  When determining Appellant's role in the offense, the guidelines instruct us to consider:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. app. n. 4.

Without again recalling the wealth of evidence that the Government introduced against Appellant, we are convinced that the Government provided sufficient evidence with which the district court could find that Appellant maintained a leadership role in the offense.

Second, the district court was not clearly erroneous in finding that Appellant possessed a firearm within the meaning of the guidelines. U.S.S.G. § 2D1.1(b)(1) "calls for an increase of two levels to a person's base offense level for some drug related crimes when a 'dangerous weapon (including a firearm) was possessed.'" United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997) (citation omitted). In order for this enhancement to apply, the Government must prove by a preponderance of the evidence (1) that the firearm was present; and (2) that it is probable that the firearm was connected to the drug crime. Id. As to the first requirement, neither proof of actual possession nor ownership of the weapon or the land on which it was found is necessary. United States v. Payne, 81 F.3d 759, 762–63 (8th Cir. 1996). It is sufficient that the individual exercised "'ownership, dominion, or control' either over the firearm or the premises on which it is found." Id. at 762 (citation omitted). To establish the second requirement, mere presence of a weapon is not enough. United States v. Bost, 968 F.2d 729, 732 (8th Cir. 1992). Rather, the Government must prove that "'a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant.'" Id. (citing United States v. Hooten, 942 878, 882 (5th Cir. 1991)). The Government in this case presented evidence of numerous firearms and hundreds of rounds of ammunition on the property that Appellant leased and on which Appellant and "his workers" produced marijuana. Based on this evidence, the district court was not clearly erroneous in finding that Appellant had possession of the firearms within the meaning of the guidelines and that there existed the required connection between the firearms and the underlying offenses.

Third, the district court did not abuse its discretion when sentencing Appellant to 135 months' imprisonment. Because Appellant's sentence was within the guidelines range, it is entitled to a presumption of reasonableness. Rita v. United States, 551 U.S. 338, 347 (2007); United States v. Battiest, 553 F.3d 1132, 1136 (8th Cir. 2008), cert. denied, 129 S. Ct. 2452 (2009). Upon review of the transcript, it is evident that the district court adequately considered the § 3553(a) factors and imposed a reasonable sentence. Appellant makes no argument to persuade us otherwise. Accordingly, the district court did not abuse its discretion.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

_____