UNITED STATES of America, Appellee,

v.

John ALTMAN, Defendant–Appellant.

No. 831, Docket 89–1479.

United States Court of Appeals,
Second Circuit.

Argued Feb. 20, 1990.

Decided April 19, 1990.

Joel Martin Aurnou, White Plains, N.Y., for defendant-appellant.

Theodore E. Chervin, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Joan McPhee, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before FEINBERG, CARDAMONE, and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendant–appellant John Altman appeals from a judgment entered on September 18, 1989, in the United States District Court for the Southern District of New York (Leisure, J.) imposing a ten-year term of imprisonment for sexual exploitation of a minor and a ten-year term of imprisonment for interstate transportation of a minor for illegal sexual activity, the terms to run concurrently, and a five-year term of imprisonment on each of two counts of wire fraud, those terms also to be served concurrently. The ten-year term and the five-year term were imposed to run consecutively, for a total of fifteen years. Altman contends that the district court erred in applying the Sentencing Guidelines by increasing his base offense levels for obstruction of justice and the vulnerability of the victims, by not crediting his acceptance of responsibility, and by considering a state misdemeanor conviction in determining his criminal history category. We conclude that the court erred in failing to consider key evidence bearing on the enhancement of sentence for obstruction of justice and relevant to the denial of credit for acceptance of responsibility. Therefore, we vacate the sentence and remand for resentencing in a manner consistent with this opinion.

## BACKGROUND

Altman was charged with, and pleaded guilty to, one count of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251 (1988); one count of interstate transportation of a minor with intent to engage in illegal sexual activity, in violation of 18 U.S.C. § 2423 (1988); and two counts of wire fraud, in violation of 18 U.S.C. § 1343 (1988). Altman posed as an owner of a modeling agency and induced women to pay him money to become his models. He then plied the women with the amphetamine diet pill Didrex, had intercourse with them, and took sexually explicit photographs of them. One of the women Alt-

man victimized was seventeen-year-old Karen Bridges, the minor referred to in the first two counts of the indictment. Altman brought Bridges from a nude bar in Tampa, Florida, to New York City, where he sexually abused her and took sexually explicit photographs of her. At sentencing, Altman claimed that all of the women subject to his abuse were adult nude or topless dancers and were willing models. He also asserted that he used the women to obtain prescriptions for Didrex for his personal use and that each woman took only a prescribed dosage of three diet pills per day. In conducting this scheme, Altman made nearly 500 long-distance calls, two of which were charged in the wire fraud counts of the indictment.

In accordance with Sentencing Guidelines section 3D1.2, the probation department established in its presentence investigation report two groups of counts. It combined in one group the first two counts, sexual exploitation of a minor and interstate transportation of a minor for illegal sexual activity. Counts three and four, the two wire fraud counts, were combined in the other group.[1] The first count had a base offense level of 25. United States Sentencing Commission, *Guidelines Manual*, § 2G2.1 (Nov.1989) (hereafter "Sentencing Guidelines"). A two-level enhancement for the known vulnerability of the victims, *id.* § 3A1.1, and a two-level enhancement for obstruction of justice, *id.* § 3C1.1, increased the offense level to 29. The second count had a base offense level of 16 and an internal enhancement of four levels for the use of drugs to coerce a victim. *Id.* § 2G1.2(a) & (b)(1). The addition of the two-level enhancement for obstruction of justice resulted in an offense level of 22 for the second count. The probation department then used the greater of the two adjusted base offense levels, that of the first count, to calculate the offense level for the group consisting of the first two counts. *See id.* § 3D1.3 & application note 3. The base offense level of 15, assigned to the wire fraud counts, was not considered in determining the combined of-

fense level. *See id.* § 3D1.4(c). Since Altman attempted to engage in obstructive conduct and took only partial responsibility for his criminal acts, the probation department recommended that he not receive credit for accepting responsibility. *Id.* § 3E1.1 (two-level credit).

The probation department then calculated Altman's criminal history category. Altman's history included a May 1989 New York State misdemeanor conviction for sexual misconduct, to which he had pleaded guilty while in federal detention, and for which he received a sentence of six months to be served concurrently with another state sentence. A criminal history category of VI was indicated. *Id.* § 4A1.1(b). The sentencing range for an offense level of 29 and a criminal history category VI is 151 to 188 months. *See id.* Ch. 5, Pt. A sentencing table.

The government urged the court to adopt the two-level enhancement in Altman's sentence for obstruction of justice and described Altman's conduct in its Sentencing Memorandum. While in federal custody awaiting sentencing, Altman called one witness and instructed her to tell the police that they only went on a date. Prior to his guilty plea, he told one of the victims when he would be released, offered to pay her for her lost wages for the time she was in New York, and asked her to send him her photograph. He also wrote to another victim and requested that she not testify against him. Altman offered a cooperating witness money, credit cards, and a partnership in a scheme similar to the fake modeling agency to coax that witness into changing his testimony. Based on this record, the court found that Altman "took an active role of trying to influence various witnesses through telephone and letters."

At the sentencing proceeding, Altman asserted that his obstructive acts were not willful and therefore objected to the probation department's finding that he had obstructed justice and consequently was not entitled to a reduction for acceptance of responsibility. He explained that prior to his arrest he was taking medication for

1. Altman does not challenge the sentence imposed under the wire fraud counts.

manic depression and a chemical imbalance but was denied that medication while in federal custody. He claimed to have engaged in the obstructive conduct while suffering from these ailments, which, his counsel argued, completely deprived him of impulse control. In support of his contentions, Altman produced at his sentence hearing Dr. Harvey Lothringer, the Westchester County Jail Psychiatrist who examined and treated him while he awaited sentencing. Altman asserted that the doctor's testimony would establish that his obstructive behavior was the result of his mental and physical condition. Altman claimed that the pre-sentence report misquoted Dr. Lothringer as saying that Altman manipulated legal proceedings by refusing to take his medication. The district court did not allow the testimony of Dr. Lothringer, who was present in the courtroom during the sentencing proceeding, but determined that it would not consider the misquoted material contained in the pre-sentence report. Altman also claimed that his pre-arrest restitution to the victims and his guilty plea proved that he had accepted responsibility. He also pointed to his cooperation with the authorities as proof that he did not obstruct justice. He then denied that he knew Bridges was seventeen years old and claimed that she, like the other women he photographed, was a topless dancer who willingly posed for him.

The court accepted the sentence recommended by the probation department in its pre-sentence report, agreeing with the probation department and the government in denying Altman credit for acceptance of responsibility. The court sentenced Altman to concurrent terms of imprisonment of ten years on the first two counts and concurrent terms of imprisonment of five years on the two wire fraud counts, with the two sets of concurrent terms to run consecutively, for a total of fifteen years. Altman also was sentenced to supervised release for a term of five years on all counts and directed to pay a special assessment of $200.

## DISCUSSION

Altman contends that his sentence was enhanced improperly for attempted obstruction of justice because his conduct was not willful on account of his manic depressive condition and chemical imbalance. He claims that the sentence also was enhanced improperly for knowingly exploiting vulnerable victims, because the charged substantive offenses included the same elements as the vulnerability enhancement. The court also erred, he continues, by not crediting his acceptance of responsibility. Finally, Altman asserts that it was against public policy for the court to include his New York misdemeanor conviction in the calculation of his criminal history category. He asserts that he entered a plea of guilty while in federal custody because he was in no position to contest the charge and notes that he was not sentenced to any additional time on the state conviction. We find that the court erred only in refusing to consider relevant evidence concerning obstruction of justice, a refusal that also affected the court's consideration of the acceptance of responsibility factor.

▉▉▉▉ Under Guidelines section 3C1.1 Altman's conduct, in contacting two victims and other potential witnesses, constituted attempted obstruction of justice. *See* Sentencing Guidelines § 3C1.1 application note 1(a), (b), (d). Such conduct, however, may not result in sentence enhancement unless it is willful. *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990); Sentencing Guidelines § 3C1.1.

> As written, Guidelines § 3C1.1 contains a clear *mens rea* requirement that limits its scope to those who "willfully" obstruct or attempt to obstruct the administration of justice.... [W]e are convinced that the word "willfully," as used in section 3C1.1, requires that the defendant consciously act with the *purpose* of obstructing justice.

*Stroud*, 893 F.2d at 507 (emphasis in original). Altman claims that his conduct was the result of an untreated chemical imbalance and mental illness, which he attempted to demonstrate by proffering Dr. Lothringer's testimony at the sentencing pro-

ceeding. The court, however, did not permit the doctor to testify, and merely disregarded so much of the pre-sentence report as misquoted the doctor. Rejection of the testimony offered deprived the court of any medical opinion concerning Altman's condition while he was in federal custody as it related to his obstructive conduct. That opinion would have aided the court in determining whether Altman "consciously act[ed] with the purpose of obstructing justice" or whether his condition deprived him of the ability to act willfully. *Id.*

■ The district court concluded that Altman's obstruction of justice, as well as his testimony during the sentencing proceeding, belied his claim of acceptance of responsibility. Since obstruction of justice generally precludes a finding that defendant accepted responsibility, *see* Sentencing Guidelines § 3E1.1 application note 4,[2] the court's finding that Altman obstructed justice without considering Dr. Lothringer's testimony also denied Altman the opportunity to establish that he accepted responsibility. Altman contended that he did not know Bridges' age, denied sexually abusing the victims, and said that the women only obtained Didrex for him on their prescriptions. At the same time, he admitted his guilt to the charged offenses. His counsel noted that Altman's manic condition compelled him to "go[] back and forth" between reality and his own world. Thus, Altman's medical condition might explain his otherwise inconsistent statements. The court failed to "provide[] a procedure that afford[ed Altman] the opportunity to be heard adequately," *United States v. Palta*, 880 F.2d 636, 641 (2d Cir.1989), by not permitting the doctor to testify. On remand, the district court must consider the proffered medical evidence in connection with the findings to be made regarding obstruction of justice and acceptance of responsibility.

■ Sentencing Guidelines section 3A1.1 requires an increase by two levels "[i]f the defendant knew or should have known that a victim ... was unusually vulnerable due to [his or her] age, physical or mental condition." Altman contends that this vulnerability adjustment should not be applied because both the sexual exploitation of a minor and the interstate transportation of a minor for illegal sexual activity offenses specifically incorporate this factor. *See* Sentencing Guidelines § 3A1.1 commentary note 2. While both sexual exploitation offenses include the age of the victim in setting their respective base offense levels, and thus cannot be enhanced further for that reason, Altman's contention does not take account of the fact that he drugged his victims, making them physically and mentally more vulnerable. Although the Sentencing Guidelines that pertain specifically to interstate transportation of a minor for illegal sexual activities embrace the vulnerability factor as to the use of drugs to coerce the victim, *see id.* § 2G1.2(b)(1) (four-level increase), and as to the age of the victim as well, the Guidelines that pertain specifically to sexual exploitation of a minor do not refer to the coercion of the victims or the use of drugs, *see id.* § 2G2.1. Because the counts were grouped properly and without objection under the sexual exploitation of a minor count, the court properly considered Altman's drugging of his victims to enhance his sentence under section 3A1.1.

■ Altman contends that the state misdemeanor, to which he pleaded guilty while in federal custody, should not have been considered in determining his criminal history category. He argues that the use of a conviction under such circumstances will discourage others from pleading guilty to state offenses while in federal custody. However that may be, Altman did not object to the probation department report insofar as the report established his criminal history category, and he did not otherwise challenge the assigned criminal history category in the district court. He therefore waived the contention. *See United States*

---

**2.** After Altman was sentenced, the United States Sentencing Commission amended section 3E1.1 application note 4 to recognize that only in "extraordinary cases ... adjustments under both §§ 3C1.1 and 3E1.1 may apply." United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 application note 4 (Nov. 1989).

*v. Soliman,* 889 F.2d 441, 445 (2d Cir.1989). The Guidelines were applied correctly in any event. Guidelines section 4A1.1(b) compels the addition of two points to Altman's criminal history category for his misdemeanor, resulting in a criminal history category of VI, since he was sentenced to sixty days for that offense. Despite the fact that this misdemeanor sentence is concurrent with a previous state sentence, the length of the sentence as imposed and not as actually served is used to determine whether the sentence is included in a defendant's criminal history category. *See* Sentencing Guidelines § 4A1.2 application note 2. Therefore, the court correctly included Altman's recent misdemeanor conviction in calculating his criminal history category.

## CONCLUSION

The sentence imposed is vacated. We remand for resentencing in a manner consistent with this opinion.