United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 6, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-41598
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

TROY PHILLIP DOCK,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for
the Eastern District of Texas
(USDC No. 4:02-CR-62-1)
_____

Before REAVLEY, DAVIS and WIENER, Circuit Judges.

PER CURIAM:[*]

    Troy Phillip Dock appeals the district court's imposition of 405 months'

imprisonment.  This court has jurisdiction under 18 U.S.C. § 3742(a)(2) (providing

for review of a sentence imposed as a result of an incorrect application of the United

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

States Sentencing Commission Guidelines) and 28 U.S.C. § 1291. We find that the district court correctly applied the guidelines and therefore affirm.

## I. Background

Dock, a United States citizen, lived in Juarez, Mexico and worked as a truck driver. In July 2002, he and a co-defendant, Sprague, were hired to transport a load of medical supplies from El Paso to Wisconsin. Having agreed with an alien smuggling operation to transport about fifty illegal Mexican immigrants from rural New Mexico to Dallas, Dock and Sprague drove the truck, filled with medical supplies, to New Mexico to pick up the aliens late on July 26, 2002. The majority of the aliens were directed into the two- to three-foot space above the cargo in the trailer, which was not equipped to transport living beings. Sprague then padlocked the rear trailer doors. Between 1 a.m. and 2:30 p.m. on July 27, Dock and Sprague drove the tractor-trailer from New Mexico to Dallas. During the morning and early afternoon, heat in the trailer (reaching an estimated 150 degrees Fahrenheit) caused conditions to become unbearable. Those inside, desperate for ventilation and water, attempted to break through the trailer walls to get air and screamed and pounded on the walls for help. When Dock and Sprague stopped at a truck stop in Dallas at 2:30 p.m. and unlocked the trailer doors, the aliens jumped and fell out of the trailer, some unconscious. Dock and Sprague closed the trailer doors and traveled another

2

50 miles to Anna, Texas. There they discovered that three men remained in the trailer, two of whom were dead and one of whom was in a coma. Dock and Sprague later admitted involvement in the smuggling operation to state troopers who responded to the scene.

The government charged Dock with one count of racketeering activity under the Racketeer Influenced Corrupt Organizations Act (RICO), one count of interstate travel in aid of racketeering (ITAR), multiple counts of alien transporting, and one count of conspiring to transport illegal aliens. Dock pled guilty to the RICO, ITAR, and conspiracy counts.[1] The district court accepted his plea.

The district court determined that the proper base offense level for Dock's conduct was 44, reduced to 41 for acceptance of responsibility. The court then imposed enhancements for vulnerable victims, use of special skill, and restraint of victims, resulting in a range of 324-405 months. The court imposed a sentence of 405 months, and Dock appealed.

---

[1] When Dock pled guilty, he admitted to six underlying offenses for the RICO count: one allegation of alien smuggling, one allegation of participating in a conspiracy to smuggle aliens, two allegations of state felony murder, one allegation of money laundering, and one allegation of conspiring to launder money. He admitted to four underlying offenses for the ITAR count: one allegation of alien smuggling, two allegations of state felony murder, and one allegation of conspiring to launder money.

In this appeal, Dock attacks the district court's determination of his base offense level and each enhancement. In addition, he argues that the district court's application of the Sentencing Guidelines violated the Sixth Amendment to the U.S. Constitution under *Blakely v. Washington*, __ U.S. __, 124 S. Ct. 2531 (2004). Because we do not believe that Dock's base offense level, restraint of victims, and special skill arguments merit further attention, we affirm the district court's opinion on those points for the reasons stated therein. *United States v. Dock*, 293 F. Supp. 2d 704 (E.D. Tex. 2003). Dock's Sixth Amendment argument fails as well, as this court has held that *Blakely* does not apply to the Guidelines. *United States v. Pineiro*, 377 F.3d 464, 465-66 (5th Cir. 2004). Although we find that the district court properly enhanced Dock's sentence for vulnerable victims, this issue deserves some discussion. Thus, this opinion is directed solely to the vulnerable victims issues.

## II. Standard of Review

When reviewing a sentence imposed under the Sentencing Guidelines, this court reviews the district courts application or interpretation of the guidelines *de novo* and its factual findings for clear error. *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). We will uphold a sentence unless it was imposed in violation of the law, was an incorrect application of the guidelines, is outside the applicable

4

guideline range, or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable. 18 U.S.C. § 3742(e); *U.S. v. Ocana*, 204 F.3d 585, 588 (5th Cir. 2000). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. U.S.*, 508 U.S. 36, 38 (1993).

### III. Vulnerable Victims

Dock attacks the district court's imposition of a four level vulnerable victims enhancement to his sentence for the RICO and ITAR counts. Section 3A1.1(b) of the guidelines provides for such an increase "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The commentary defines a "vulnerable victim" as a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise susceptible to the criminal conduct." U.S. SENTENCING GUIDELINES MANUAL § 3A1.1 cmt. n.2 (2004) (hereinafter "SENTENCING GUIDELINES"). The enhancement encompasses not only direct victims of the defendant's offense of conviction, but also victims of any conduct committed by the defendant in preparation for or during the commission of the offense. *Id.*; SENTENCING GUIDELINES § 1B1.3(a)(1).

Dock first argues that the district court erroneously based its vulnerability determination solely on the aliens' illegal status, in contravention of this court's

5

holding in *United States v. Moree*, 897 F.2d 1329 (5th Cir. 1990). In *Moree*, we held that "[a] condition that occurs as a necessary prerequisite to the commission of the crime cannot constitute an enhancing factor under § 3A1.1. The vulnerability that triggers § 3A1.1(b) must be an 'unusual' vulnerability which is present in only some victims of that type of crime." *Id.* at 1335. Because an alien's illegal status is a prerequisite to the crime of alien smuggling, it indeed would have been error for the district court to find unusual vulnerability based on that status. *See* 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii) (providing criminal penalties for transport and concealment of an alien illegally present in the United States).

Contrary to Dock's assertions, however, the district court did not base its vulnerability finding on the aliens' illegal status. Rather, the court found that Dock knew or should have known of the following facts: (1) the aliens had been kept isolated in cramped conditions in rural New Mexico waiting for transport, some for up to two weeks; (2) once Dock and Sprague had locked the aliens in the truck "they were indeed 'particularly susceptible' to the criminal conduct which would be inflicted upon them over the next twelve hours"; and (3) the aliens were so desperate for transport away from the border that they were at the mercy of their transporters. *Dock*, 293 F. Supp. 2d at 713-14. Although the aliens' desperation for transport may have been a result of their illegal status, not every illegal alien who enters this country finds themselves in the desperate circumstances these people faced.

6

Because the district court had the opportunity to observe several of the aliens in the

proceedings below, we defer to its finding that one or more of the aliens were

particularly vulnerable to the crime due to the factors enumerated above.[2]  *United*

[2] At oral argument, Dock's counsel also argued that the district court erred by considering factors created by the defendant during the course of the crime in its vulnerability determination (i.e., the vulnerability created when Dock and Sprague placed the lock on the trailer door).  Counsel also argued that the district court impermissibly based the vulnerable victims enhancement on a characteristic shared by a large group of potential victims—the economic desperation of poor Mexicans seeking work in the United States to increase their standard of living.  However, Dock did not raise these arguments in his appellate brief.  They are therefore waived, and we decline to decide them.  *United States v. Thomas*, 214 F.3d 608, 611 n.3 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999).

We note that, while there is little authority on the issue, both the Second and Ninth Circuits have upheld a district court's vulnerability finding based, at least in part, on vulnerability created by the defendant during the course of the crime.  *United States v. Veerapol*, 312 F.3d 1128 (9th Cir. 2002); *United States v. Altman*, 901 F.2d 1161 (2d Cir. 1990); *cf. United States v. Zats*, 298 F.3d 182, 189-90 (3d Cir. 2002) (stating that the knowledge or notice requirement of § 3A1.1(b) can be satisfied by knowledge that arises during the course of an ongoing crime).  In *Veerapol*, the defendant was convicted of holding another to involuntary servitude after she brought a young woman to the United States from Thailand and forced the woman to work for her.  The court affirmed the district court's vulnerable victims enhancement based on the victim's immigrant status, her lack of sophistication, education, and knowledge of U.S. law, and "*the treatment of [the victim] while [she was] here.*"  *Veerapol*, 312 F.3d at 1133-34 (emphasis added).  In *Altman*, the defendant had posed as a modeling agency owner and induced women to become his models, then "plied them with [an] amphetamine diet pill and had sex with them."  He was convicted of sexual exploitation of a minor.  The court affirmed the district court's sentence enhancement based on vulnerable victims because the defendant "drugged his victims, making them physically and mentally more vulnerable."  *Altman*, 901 F.2d at 1165.

Dock did argue in his appellate brief that the district court impermissibly based the enhancement on the aliens' class status as illegal immigrants.  As discussed above, however, this contention is without merit.  At oral argument, Dock's counsel additionally argued that the district court based the enhancement on the aliens' class status as poor illegal immigrants desperate for work in the United States.  Although we decline to decide whether the enhancement may be based on a victim's membership in a large class of potential victims defined by a shared characteristic that makes the entire class particularly vulnerable because it was not adequately presented in Dock's brief, we note that courts have upheld such use of § 3A1.1(b).  *See, e.g., U.S. v. Mendoza*, 262 F.3d 957, 960 (9th Cir. 2001) (stating that the application note to § 3A1.1 makes clear that a

*States v. Rocha*, 916 F.2d 219, 244 (5th Cir. 1990).

Dock also argues that the district court erroneously enhanced his sentence under § 3A1.1(b), because he did not "target" the aliens because they were vulnerable. That section, however, does not require that the defendant chose victims based on vulnerability, but only that he knew or should have known of the vulnerability. *United States v. Burgos*, 137 F.3d 841, 843-44 (5th Cir. 1998). Although some circuits had held that targeting was required under the guideline before 1995, this court has never articulated a targeting requirement. *Id.* Moreover, the guideline's application notes were amended in 1995 to clarify that a court need not find targeting to enhance a sentence under § 3A1.1. *Id.*; *see also Zats*, 298 F.3d at 189-90. Because the district court's finding that Dock knew or should have known of the aliens' particular vulnerability is plausible in light of the record, its application of § 3A1.1(b) was not clearly erroneous. *United States v. Watson*, 966 F.2d 161, 162 (5th Cir. 1992).

IV.  Conclusion

The district court correctly applied the sentencing guidelines, and we therefore affirm Dock's sentence. *See* 18 U.S.C. § 3742(e); *Ocana*, 204 F.3d at 588.

AFFIRMED.

---

large class of potential victims may be particularly vulnerable due to a shared characteristic, such as cancer); *see* SENTENCING GUIDELINES § 3A1.1 application n.2.