United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 19, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-41598
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

TROY PHILLIP DOCK,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for
the Eastern District of Texas
_____

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before REAVLEY, DAVIS and WIENER, Circuit Judges.

REAVLEY, Circuit Judge:

    Troy Philip Dock appeals the district court's imposition of 405 months'

imprisonment. We originally affirmed the sentence in an unpublished opinion,

finding that the court correctly applied the United States Sentencing Commission

Guidelines. *United States v. Dock*, No. 03-41598, 2005 U.S. App. LEXIS 194 (5th

1

Cir. Jan. 6, 2005). We rejected Dock's argument that the court's application of the guidelines violated his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2005), under our then-controlling precedent, which held *Blakely* inapplicable to the federal guidelines. *United States v. Pineiro*, 377 F.3d 464, 465-66 (5th Cir. 2004), *vacated by Pineiro v. United States*, __ U.S. __, 125 S. Ct. 1003 (2005), *on remand at United States v. Pineiro*, 410 F.3d 282 (5th Cir. 2005). Dock appealed to the Supreme Court. Following the Court's decision that a district court's sentence enhancement based on facts not found by a jury or admitted by the defendant does offend the Sixth Amendment in *United States v. Booker*, __ U.S. __, 125 S. Ct. 738 (2005), the Court vacated our original opinion and remanded for our reconsideration. *Dock v. United States*, __ U.S. __, 125 S. Ct. 2520 (2005). We again reject Dock's non-constitutional challenges to the district court's application of the guidelines, and, because Dock cannot establish that the district court's fact findings at sentencing constituted plain error, we also reject his Sixth Amendment challenge.

## I. Background

Dock, a United States citizen, lived in Juarez, Mexico and worked as a truck driver. In July 2002, he and a co-defendant, Sprague, were hired to transport a load of medical supplies from El Paso to Wisconsin. Having agreed with an alien

2

smuggling operation to transport about fifty illegal Mexican immigrants from rural New Mexico to Dallas, Dock and Sprague drove the truck, filled with medical supplies, to New Mexico to pick up the aliens late on July 26, 2002. The majority of the aliens were directed into the two- to three-foot space above the cargo in the trailer, which was not equipped to transport living beings. Sprague then padlocked the rear trailer doors. Between 1 a.m. and 2:30 p.m. on July 27, Dock and Sprague drove the tractor-trailer from New Mexico to Dallas. During the morning and early afternoon, heat in the trailer (reaching an estimated 150 degrees Fahrenheit) caused conditions to become unbearable. Those inside, desperate for ventilation and water, attempted to break through the trailer walls to get air and screamed and pounded on the walls for help. When Dock and Sprague stopped at a truck stop in Dallas at 2:30 p.m. and unlocked the trailer doors, the aliens jumped and fell out of the trailer, some unconscious. Dock and Sprague closed the trailer doors and traveled another fifty miles to Anna, Texas. There they discovered that three men remained in the trailer, two of whom were dead and one of whom was in a coma. Dock and Sprague later admitted involvement in the smuggling operation to state troopers who responded to the scene.

The government charged Dock with one count of racketeering activity under the Racketeer Influenced Corrupt Organizations Act (RICO), one count of interstate

3

travel in aid of racketeering (ITAR), multiple counts of alien transporting, and one count of conspiring to transport illegal aliens. Dock pleaded guilty to the RICO, ITAR, and conspiracy counts.[1] The district court accepted his plea.

The district court determined that the combined offense level for Dock's conduct was 44, after imposing enhancements for vulnerable victims, use of special skill, and restraint of victims. *United States v. Dock*, 293 F. Supp. 2d 704, 708-15 (E.D. Tex. 2003). It applied a three-level reduction for acceptance of responsibility, resulting in an offense level of 41 and a range of 324-405 months. *Id*. at 715. The court imposed a sentence of 405 months, and this appeal followed. Because we do not believe that Dock's non-constitutional challenges to his base offense level and enhancements for restraint of victims and special skill merit further attention, we affirm the district court's opinion on those points for the reasons stated therein. *Id*. at 708-15; *see also United States v. Sprague*, No. 03-41733, 2005 U.S. App. LEXIS 9944 (5th Cir. May 31, 2005). Although we ultimately conclude that Dock's non-constitutional challenge to the vulnerable victims enhancement is

---

[1] When Dock pleaded guilty, he admitted to six underlying offenses for the RICO count: one allegation of alien smuggling, one allegation of participating in a conspiracy to smuggle aliens, two allegations of state felony murder, one allegation of money laundering, and one allegation of conspiring to launder money. He admitted to four underlying offenses for the ITAR count: one allegation of alien smuggling, two allegations of state felony murder, and one allegation of conspiring to launder money.

without merit, the issue deserves some discussion.  This opinion is therefore directed solely to Dock's Sixth Amendment challenge to the district court's findings of fact at sentencing under *Booker* and his non-constitutional challenge to the vulnerable victims enhancement .

## II. *Booker*

Dock did not raise his *Blakely/Booker* challenge at sentencing, so our review of the issue is for plain error only.  *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).  Dock must establish that, in using facts not admitted by Dock or proven to a jury to enhance Dock's sentence under mandatory guidelines, the district court committed (1) error, (2) that is plain, (3) that affected Dock's substantial rights, and (4) that seriously affected the fairness or integrity of the judicial proceeding.  *Id.* Under the third prong, Dock must show that the error affected the outcome of sentencing; i.e., that the district court would have imposed a significantly different sentence under an advisory rather than a mandatory guidelines scheme.  *Id*. at 521. Dock has not carried that burden.  The district court provided its reasons for enhancing Dock's sentence in a published opinion, and the record does not indicate that the court would have imposed a significantly different sentence if operating under advisory guidelines.  *Sprague*, 2005 U.S. App. LEXIS 9944, *3-4; *Mares*, 402 F.3d at 521-22.  Because Dock has not shown plain error, we cannot vacate his

5

sentence on Sixth Amendment grounds.

### III.  Vulnerable Victims

Dock contends that the district court committed non-constitutional sentencing error in enhancing his sentence for vulnerable victims.  Section 3A1.1(b) of the guidelines provides for such an enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim."  The commentary defines a "vulnerable victim" as a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise susceptible to the criminal conduct."  U.S. SENTENCING GUIDELINES MANUAL § 3A1.1 cmt. n.2 (2004) (hereinafter "SENTENCING GUIDELINES").  The enhancement encompasses not only direct victims of the defendant's offense of conviction, but also victims of any conduct committed by the defendant in preparation for or during the commission of the offense.  *Id.*; SENTENCING GUIDELINES § 1B1.3(a)(1).  After *Booker*, where the sentencing judge imposes a sentence within a properly calculated guidelines range, we will generally find the sentence reasonable.  *Mares*, 402 F.3d at 519.  We review the court's factual findings in calculating that range for clear error and its application or interpretation of the guidelines de novo.    *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999).

Dock first argues that the district court erroneously based its vulnerability

6

determination solely on the aliens' illegal status, in contravention of this court's holding in *United States v. Moree*, 897 F.2d 1329 (5th Cir. 1990). In *Moree*, we held that "[a] condition that occurs as a necessary prerequisite to the commission of a crime cannot constitute an enhancing factor under § 3A1.1. The vulnerability that triggers § 3A1.1(b) must be an 'unusual' vulnerability which is present in only some victims of that type of crime." *Id.* at 1335. Because an alien's illegal status is a prerequisite to the crime of alien smuggling, it indeed would have been error for the district court to find unusual vulnerability based on that status. *See* 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii) (providing criminal penalties for transport and concealment of an alien illegally present in the United States).

Contrary to Dock's assertions, however, the district court did not base its vulnerability finding on the aliens' illegal status. Rather, the court found that Dock knew or should have known of the following facts: (1) the aliens had been kept isolated in cramped conditions in rural New Mexico waiting for transport, some for up to two weeks; (2) once Dock and Sprague had locked the aliens in the truck "they were indeed 'particularly susceptible' to the criminal conduct which would be inflicted upon them over the next twelve hours"; and (3) the aliens were so desperate for transport away from the border that they were at the mercy of their transporters. *Dock*, 293 F. Supp. 2d at 713-14. Although the aliens' desperation for

transport may have been a result of their illegal status, not every illegal alien who

enters this country finds themselves in the desperate circumstances these people

faced. Because the district court had the opportunity to observe several of the aliens

in the proceedings below, we defer to its finding that one or more of them were

particularly vulnerable to the crime due to the factors enumerated above.[2] *United*

---

[2] At oral argument, Dock's counsel also argued that the district court erred by considering factors created by the defendant during the course of the crime in its vulnerability determination (i.e., the vulnerability created when Dock and Sprague placed the lock on the trailer door). Counsel also argued that the district court impermissibly based the vulnerable victims enhancement on a characteristic shared by a large group of potential victims—the economic desperation of poor Mexicans seeking work in the United States to increase their standard of living. However, Dock did not raise these arguments in his appellate brief. They are therefore waived, and we need not decide them. *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999).

We note that, while there is little authority on the issue, both the Second and Ninth Circuits have upheld a district court's vulnerability finding based, at least in part, on vulnerability created by the defendant during the course of the crime. *United States v. Veerapol*, 312 F.3d 1128 (9th Cir. 2002); *United States v. Altman*, 901 F.2d 1161 (2d Cir. 1990); *cf. United States v. Zats*, 298 F.3d 182, 189-90 (3d Cir. 2002) (stating that the knowledge or notice requirement of § 3A1.1(b) can be satisfied by knowledge that arises during the course of an ongoing crime). In *Veerapol*, the defendant was convicted of holding another to involuntary servitude after she brought a young woman to the United States from Thailand and forced the woman to work for her. The court affirmed the district court's vulnerable victims enhancement based on the victim's immigrant status, her lack of sophistication, education, and knowledge of U.S. law, and "*the treatment of [the victim] while [she was] here.*" *Veerapol*, 312 F.3d at 1133-34 (emphasis added). In *Altman*, the defendant had posed as a modeling agency owner and induced women to become his models, then "plied them with [an] amphetamine diet pill and had sex with them." He was convicted of sexual exploitation of a minor. The court affirmed the district court's sentence enhancement based on vulnerable victims because the defendant "drugged his victims, making them physically and mentally more vulnerable." *Altman*, 901 F.2d at 1165.

8

*States v. Rocha*, 916 F.2d 219, 244 (5th Cir. 1990).

Dock also argues that the district court erroneously enhanced his sentence under § 3A1.1(b), because he did not "target" the aliens because they were vulnerable. That section, however, does not require that the defendant chose victims based on vulnerability, but only that he knew or should have known of the vulnerability. *United States v. Burgos*, 137 F.3d 841, 843-44 (5th Cir. 1998). Although some circuits had held that targeting was required under the guideline before 1995, this court has never articulated a targeting requirement. *Id*. Moreover, the guideline's application notes were amended in 1995 to clarify that a court need not find targeting to enhance a sentence under § 3A1.1. *Id*.; *see also United States v. Zats*, 298 F.3d 182, 189-90 (3d Cir. 2002). The district court's finding that Dock knew or should have known of the aliens' particular vulnerability is plausible in light

_____

Dock did argue in his appellate brief that the district court impermissibly based the enhancement on the aliens' class status as illegal immigrants. As discussed above, however, this contention is without merit. At oral argument, Dock's counsel additionally argued that the district court based the enhancement on the aliens' class status as poor illegal immigrants desperate for work in the United States. Although we decline to decide whether the enhancement may be based on a victim's membership in a large class of potential victims defined by a shared characteristic that makes the entire class particularly vulnerable because it was not adequately presented in Dock's brief, we note that courts have upheld such use of § 3A1.1(b). *See, e.g., U.S. v. Mendoza*, 262 F.3d 957, 960 (9th Cir. 2001) (stating that the application note to § 3A1.1 makes clear that a large class of potential victims may be particularly vulnerable due to a shared characteristic, such as cancer); *see* SENTENCING GUIDELINES § 3A1.1 application n.2.

9

of the record, and its application of § 3A1.1(b) was thus not clearly erroneous. *United States v. Watson*, 966 F.2d 161, 162 (5th Cir. 1992).

In sum, the district court correctly applied the vulnerable victims guideline in its calculation of Dock's guidelines range, and we therefore conclude that the sentence, which falls within that range, is reasonable. *Mares*, 402 F.3d at 519.

## IV. Conclusion

Because Dock has not established that the district court's application of the then-mandatory sentencing guidelines constitutes plain error, we reject his Sixth Amendment challenge to his sentence. We find no non-constitutional error in the district court's application of the guidelines, including its enhancement of Dock's sentence for vulnerable victims, and consequently affirm the sentence.

AFFIRMED.