United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-50474

_____

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

  v.

JOSE ISAIAS MEDINA-ARGUETA,

       Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Jose Isaias Medina-Argueta pleaded guilty to harboring illegal aliens and conspiring to harbor illegal aliens in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 2, but reserved the right to contest the district court's "vulnerable victim" enhancement under the United States Sentencing Guidelines § 3A1.1(b)(1). He claims that the district court erred by increasing his guideline sentence range two levels pursuant to the vulnerable victim sentence enhancement. We agree that the district court erred in applying the vulnerable victim sentence enhancement, but conclude that because Medina-Argueta's sentence falls within a properly calculated guideline range, his sentence

is presumptively reasonable.

I

Medina-Argueta's presentence report recommended four enhancements: a six-level enhancement because the offense involved between 25 and 99 illegal aliens, a four-level enhancement because Medina-Argueta brandished a pistol during the offense, a two-level enhancement because Medina-Argueta intentionally or recklessly created a substantial risk of harm to the aliens, and another two-level enhancement because Medina-Argueta knew or should have known that at least one illegal alien was a vulnerable victim. Medina-Argueta was entitled to a three-level reduction in his offense level for acceptance of responsibility. His criminal history score was zero, and combined with his total offense level of 23, this resulted in a guideline imprisonment range of 46 to 57 months.

Medina-Argueta objected to the presentence report recommendation, arguing that the evidence did not support a finding that at least one alien was a vulnerable victim. After hearing testimony, the district court overruled Medina-Argueta's objection. The district court found that there was at least one vulnerable victim involved, possibly more. The court also granted the Government's motion for a downward departure for substantial assistance, which resulted in a guideline range of 37 to 46 months imprisonment. On March 23, 2005, the court sentenced Medina-Argueta to concurrent 37 month terms of

imprisonment, concurrent three-year terms of supervised release, and a $200 special assessment. Medina-Argueta filed a timely notice of appeal challenging the district court's ruling on the vulnerable victim two-level sentence enhancement.

## II

After *United States v. Booker*, 543 U.S. 220 (2005), we continue to review a district court's interpretation of the Guidelines *de novo* and its factual determinations, including the vulnerability of victims, for clear error. *United States v. Solis-Garcia*, 420 F.3d 511, 513-14 (5th Cir. 2005); *see also United States v. Dock*, 426 F.3d 269, 273 (5th Cir. 2005)*; United States v. Creech*, 408 F.3d 264, 270 n.2 (5th Cir. 2005). We then review the sentence, whether imposed pursuant to the Guidelines or departing from them, for unreasonableness. *United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006)(holding non-guideline sentence of 60 months probation unreasonable where the district court failed to take the Guidelines into account and misjudged the seriousness of defendant's possession of child pornography); *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). The reasonableness inquiry on appeal "is guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)." *Smith*, 440 F.3d at 706. When, in its discretion, a court imposes a sentence falling within a properly calculated guideline range, such a sentence is presumptively reasonable. *Id.* at 706-07; *United*

3

*States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006) ("We agree with our sister circuits that have held that a sentence within a properly calculated Guideline range is presumptively reasonable.").

A

Section 3A1.1(b)(1) of the United States Sentencing Guidelines provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." Comment 2 of that section explains that a vulnerable victim is someone "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." This court has determined that, in order for an illegally smuggled alien involved in a violation of 8 U.S.C. § 1324[1] to be a vulnerable victim, he must be "*more unusually vulnerable* to being held captive than would be any other smuggled alien." *United States v. Angeles-Mendoza*, 407 F.3d 742, 748 (5th Cir. 2005). "[S]usceptibility to the defendant's scheme *alone* is not enough to qualify victims as unusually vulnerable. The victims must also be vulnerable members of society and fall in the same category as the elderly, the young, or the sick." *United States v. Garza*, 429 F.3d 165, 173-74 (5th Cir. 2005) (internal

---

[1] This statute provides criminal penalties for bringing into the United States or harboring certain aliens.

4

quotations omitted).

Because an alien's illegal status is a prerequisite to the crime of alien smuggling, it is error for a district court to find unusual vulnerability based on that status. *Dock*, 426 F.3d at 273.

In Medina-Argueta's case, the district court stated:

> I look on [aliens] as desperate people who are reaching out. . . . No one died here and there is no evidence of any injury.  I cannot attribute that to the fact that these people were treated humanely and with dignity, however.  I think a lot of the fact that they remained alive could be due in no small happenstance to good fortune. I consider placing them in a small, the report says, 15-by-15 room, as extremely inhumane.  I consider holding people against their will until money is obtained extremely inhumane. I do think there was vulnerable victims here, at least one, possibly more, and I so find.

Medina-Argueta contends that the district court erred in applying the vulnerable victim enhancement.  The Government claims that the district court did not err because the aliens were confined in an apartment that measured only 15-by-15 feet, the temperature in the apartment was uncomfortably hot, one alien was held for two weeks while the smugglers waited to be paid, and the aliens were from Honduras and had therefore experienced more prolonged stress than aliens smuggled from Mexico.  Two possible errors exist: (1) the above factors are conditions of smuggling, not personal characteristics of an unusually vulnerable victim, and (2) the district court did not substantiate its conclusion

that one or more victims was vulnerable with specific findings or by direct observation of the victims.

Although it is unclear whether the district court intended the smuggling conditions to substantiate its vulnerable victim finding, none of the factors to which the Government points are characteristics of a victim that would tend to place him in the same category as the young, old, or sick, rendering him particularly vulnerable for purposes of the sentence enhancement. In *United States v. Angeles-Mendoza*, we found that the district court committed clear error in finding vulnerable victims when 29 illegal aliens were held at an Austin stash house.  The smuggled aliens were held until the defendants received fees for the transport; to deter escape, the defendants took the aliens' shoes and socks, and guarded them in a boarded-up and locked stash house with a shotgun.  407 F.3d at 745-46.  We held that generalized findings regarding the conditions of smuggled aliens "misse[d] the mark for a qualifying vulnerability."  *Id.* at 747. We pointed out that:

> The guidelines represent Congress's determination, through the Sentencing Commission, of how much punishment a particular crime deserves, taking into account the inherent nature of the type of offense. . . . Although the court may have been correct in noting the *inherent* vulnerability of smuggled aliens, we assume that such a characteristic was adequately taken into account in establishing the base offense level.

*Id.* at 747-48.

6

Along with possibly relying on the conditions of smuggling, which are not directly relevant to the vulnerable victim determination, the district court also failed to substantiate its findings with personal characteristics of the victims.  Like in *Angeles-Mendoza*, the district court in the instant case "failed to mention a characteristic [of a victim that] the defendant knowingly took advantage of, such that the offense demonstrated the extra measure of criminal depravity which § 3A1.1 intends to more severely punish."  *Angeles-Mendoza*, 407 F.3d at 747-48 (internal quotations omitted).  In addition, unlike *United States v. Dock*, the district court did not have the opportunity to observe the aliens in the proceedings below.  As a result, it would be inappropriate for us to defer to the district court in this case.  *Compare Dock*, 426 F.3d at 273.  The district court erred in applying the two-level enhancement for a vulnerable victim in determining Medina-Argueta's guideline range of imprisonment.

B

Due to the enhancement error, the district court miscalculated the appropriate guideline range and sentenced Medina-Argueta after considering an incorrect range.  Under *Duhon*, a miscalculation of the guideline range "deprives the sentence of 'great deference' and is a factor to be considered in assessing the reasonableness of the sentence."  440 F.3d at 716.

7

Without the erroneous vulnerable victim enhancement, Medina-Argueta's correct guideline range would have been 30 to 37 months. Medina-Argueta's 37 month sentence, though imposed with reference to an improperly calculated guideline range, nonetheless falls within the correct guideline range.

In our cases reviewing sentences imposed after *Booker*, we have not had occasion to address the applicability of *Alonzo*'s reasonableness presumption when the district court initially miscalculates the guideline range. We hold that in situations such as this, in which the district court miscalculates the guideline range yet imposes a sentence that falls within a properly calculated guideline range, the sentence enjoys a presumption of reasonableness. This conclusion comports with our prior decisions. *See Alonzo*, 435 F.3d at 554 ("[A] sentence *within* a properly calculated guideline range is presumptively reasonable.") (emphasis added); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005) ("This duty to 'consider' the Guidelines will *ordinarily* require the sentencing judge to determine the applicable Guidelines range even though the judge is not required to sentence within that range.") (emphasis added).

We do not believe that *Angeles-Mendoza* counsels a different outcome than the one we reach here. In *Angeles-Mendoza*, the district court incorrectly applied the same § 3A1.1(b)(1)

enhancement as was misapplied here, and this court remanded for resentencing in light of the guideline miscalculation.  407 F.3d at 746–48, 754.  That case, however, involved sentences imposed under a mandatory guideline regime, and there is no indication that the sentences imposed fell within the properly calculated guideline ranges.  Here, Medina-Argueta was sentenced post-*Booker* under the advisory guidelines, and his sentence falls within the properly calculated guideline range.[2]

## III

Though the district court miscalculated the applicable guideline range, Medina-Argueta's sentence falls "within a properly calculated guideline range," *Alonzo*, 435 F.3d at 554, and the sentence remains presumptively reasonable.  Since Medina-Argueta does not articulate any 18 U.S.C. § 3553(a) factors that militate against the sentence's reasonableness, we AFFIRM his sentence.

---

[2] Furthermore, the district court stated that, in its view, any lower sentence would be inappropriate.  In contrast to the facts of *Angeles-Mendoza*, Medina-Argueta's sentence was not imposed "*as a result* of an incorrect application of" § 3A1.1(b)(1), which would require reversal under the still-intact 18 U.S.C. § 3742(f)(1).  *See Angeles-Mendoza*, 407 F.3d at 754 ("*Booker* did not invalidate 18 U.S.C. § 3742(f)(1)."); *Duhon*, 440 F.3d at 716 ("Because [the defendant]'s non-Guideline sentence did not directly 'result' from the Guidelines error, it need not be vacated . . . based solely on the miscalculation.").  Formalism does not require us to vacate Medina-Argueta's sentence so that the district court, on remand, will simply impose the exact same sentence, which on subsequent appeal we would be required to presume reasonable under *Alonzo*.