# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1281

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Marcio De Oliveira, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  September 21, 2010
Filed:  October 20, 2010

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Marcio De Oliveira ("De Oliveira") pled guilty to two counts of harboring illegal aliens, in violation of 8 U.S.C. § 1324.  Prior to sentencing, De Oliveira moved to withdraw his guilty pleas; however, the district court denied his motion and ultimately sentenced him to fifty-one months of imprisonment after finding several sentencing enhancements.  De Oliveira now appeals, challenging the denial of his motion and three of the enhancements.  We affirm in part, reverse in part, and remand for resentencing.

## I.

On March 25, 2009, Special Agent Paul Cottrell ("Agent Cottrell") of United States Immigration and Customs Enforcement ("ICE") received a tip that numerous undocumented workers were living in extremely poor conditions in two homes. More specifically, the concerned citizen stated that one residence did not have any heat and neither residence had any food. Agent Cottrell visited the homes the following day and discovered thirteen undocumented workers in the residences. He also discovered that one of the residences did not have heat, despite it being forty-five degrees outside, and the only food present was that provided by the concerned citizen.

Upon further investigation, Agent Cottrell learned that a total of twenty-six individuals lived in both residences, even though one of the homes was designed to only house four people and the other six. Agent Cottrell also learned that twenty-four of those individuals were undocumented workers and that twenty-three of them were employed by De Oliveira to lay cable for Allwire Communication ("Allwire"). Allwire subcontracted with De Oliveira through his company, Molink. Agent Cottrell further learned that De Oliveira had rented the residences for the workers but that he had otherwise failed to pay any of the workers in over four weeks. According to the workers, this lack of pay prevented them from leaving because they could no longer afford to purchase food, let alone secure transportation.

On March 27, 2009, Agent Cottrell spoke with De Oliveira. De Oliveira admitted that he rented the residences for the workers, that he provided equipment and instruction for the workers, and that he had not paid them since February 21, 2009. De Oliveira also acknowledged that he knew the workers were "foreign nationals," by nodding his head in the affirmative after Agent Cottrell asked him.

De Oliveira was subsequently indicted, and on August 28, 2009, De Oliveira appeared before the district court to plead guilty to two counts of harboring illegal aliens. During the change-of-plea hearing, De Oliveira initially equivocated on whether he knew that his workers were illegal aliens, thereby prompting the following exchange between the district court, defense counsel, and De Oliveira:

> The Court: I don't think it's a crime to harbor foreign nationals. I think it's a crime to harbor if they're illegal aliens, and I don't want there to be any question about that. Do you concede, [counsel], that he admits on the record he knew they were illegal aliens?
>
> [Defense Counsel]: Yes, Your Honor, I do.
>
> The Court: Is that true, Mr. --
>
> The Defendant: Yes, sir.

Thereafter, the district court accepted his guilty pleas and set the matter for sentencing.

On January 27, 2010, less than a week before the scheduled sentencing, De Oliveira's newly obtained counsel moved to withdraw the guilty pleas on the grounds that he was factually innocent of the charges and that his initial counsel, Herbert Southern ("Southern"), effectively coerced him into pleading guilty by failing to prepare for trial. On February 1, 2010, the district court heard testimony on the motion, rejected it, and then proceeded to sentencing. During the sentencing, the district court found several Guideline enhancements over the objections of De Oliveira, including a three-level enhancement under U.S. Sentencing Guidelines § 2L1.1(b)(6) for creating a substantial risk of bodily injury to another; a four-level

enhancement under U.S.S.G. § 3A1.1(b) for knowing that his criminal conduct involved a large number of vulnerable victims; and a two-level role-in-the-offense enhancement under U.S.S.G. § 3B1.1(c) for being an organizer, leader, manager or supervisor of criminal activity. De Oliveira now appeals each of these rulings, essentially claiming that the district court abused its discretion in denying his motion to withdraw and misconstrued both the record and the law on finding the sentencing enhancements.

II.

A.  The Motion to Withdraw the Guilty Pleas.

"A defendant may withdraw a guilty plea before the court imposes sentence if 'the defendant can show a fair and just reason for requesting the withdrawal.'" United States v. Murphy, 572 F.3d 563, 568 (8th Cir. 2009) (quoting Fed. R. Crim. P. 11(d)(2)(B)). "Defense counsel's performance can serve as the requisite fair and just reason for withdrawal [of a guilty plea] only if [the defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." United States v. McMullen, 86 F.3d 135, 137 (8th Cir. 1996) (internal quotation and citation omitted).

> If the district court determines the defendant has presented a fair and just reason to withdraw his plea, the court may consider several other factors, such as, "whether the defendant asserts his legal innocence of the charge, the length of time between the plea and the motion to withdraw, and whether the government will be prejudiced by the withdrawal."

Murphy, 572 F.3d at 568 (quoting United States v. Gray, 152 F.3d 816, 819 (8th Cir. 1998)). "However, if a defendant does not present a fair and just reason for withdrawal of a guilty plea no need exists to examine the other factors." Gray, 152 F.3d at 819. "This court reviews the denial of a motion to withdraw a guilty plea for abuse of discretion." United States v. Rollins, 552 F.3d 739, 741 (8th Cir. 2009).

De Oliveira asserts that the district court abused its discretion in denying his motion to withdraw the guilty pleas because his counsel's ineffective assistance caused him to plead guilty, despite his innocence.[1] More specifically, De Oliveira asserts that Southern failed to prepare for trial and failed to advise him of an available legal defense, which effectively coerced him into pleading guilty because he did not want to face a hopeless trial with incompetent counsel. To support his claims, De Oliveira relies on the testimony of his wife, who stated at the evidentiary hearing that Southern appeared to be generally unprepared and just commencing his review of the government's evidence only a few days prior to trial. She also stated that Southern's opinion of the case then abruptly changed from it being easily defensible at trial to a virtually certain loss. De Oliveira additionally relies on his new counsel's argument that the government cannot show he knew or should have known that his workers were illegal because he never had a reason to suspect their illicit status, as he did not fill out any I-9s and as Allwire reviewed the workers' paperwork prior to issuing identification badges. Finally, De Oliveira relies on his own assertions of innocence and claims that Southern was unprepared and pressured him into pleading guilty.

---

[1]De Oliveira also asserts that Southern provided ineffective assistance of counsel because Southern failed to advise him of the immigration consequences of pleading guilty, as required by the subsequently decided Supreme Court case Padilla v. Kentucky, 130 S. Ct. 1473 (2010). Despite the testimony of De Oliveira's wife to the contrary, we do not believe that it is appropriate to address this issue at this time given the limited record on this specific issue.

We can find no abuse of discretion in the district court's denial of De Oliveira's motion. At the change of the plea hearing, De Oliveira admitted under oath all of the factual elements of each crime and testified that his guilty pleas were voluntary and that he was satisfied with Southern's representation. Additionally, the record indicates that Southern actively participated in De Oliveira's case until he was discharged at the sentencing hearing, as Southern filed numerous motions, took depositions, and filed an extensive set of objections to the PSR. Moreover, we have no reason to doubt the district court's factual determination that, had Southern coerced De Oliveira into pleading guilty, De Oliveira's very involved wife would have notified the lower court of the issue earlier. Consequently, De Oliveira failed to demonstrate a fair and just reason to withdraw his guilty pleas because he did not substantiate his claims of deficient counsel. Moreover, the strong evidence of De Oliveira's guilt, including his own admissions, and the timing of the motion to withdraw would more than justify the lower court's denial. Accordingly, we find no error in the district court's decision.

### B. The Substantial Risk of Bodily Injury Enhancement.

To apply an enhancement under Section 2L1.1(b)(6), the district court must find that the defendant "intentionally or recklessly creat[ed] a substantial risk of death or serious bodily injury to another person" while smuggling, transporting, or harboring unlawful aliens. U.S.S.G. § 2L1.1(b)(6). According to the supporting commentary, this enhancement applies to a "wide variety of conduct," including "transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition." Id. cmt. n.5. "We review the application of the Guidelines to the facts de novo and factual findings underlying the calculation of the Guidelines for clear error." United States v. Morse, 613 F.3d 787, 796 (8th Cir. 2010) (citation omitted).

De Oliveira asserts that the district court erred in applying this enhancement for two reasons. First, De Oliveira argues that the record is devoid of any evidence establishing that he knew about the conditions in the homes, thereby undermining any finding of intentional or reckless action on his part. Second, De Oliveira argues that the record does not demonstrate sufficiently deplorable conditions because Agent Cottrell could not testify as to the state of the residences prior to the week of March 26, 2009, and because the government failed to show that the loss of heat in one of the homes was not a temporary result of a recent winter storm.

We disagree. The record demonstrates that De Oliveira knowingly arranged to have over twenty workers reside in two small residences designed to house no more than ten individuals. We believe this type of severe overcrowding together with lack of heat and furnishings present an inherent health-and-safety risk to each of the occupants such that the application of this enhancement is warranted. Indeed, the risk of death or injury, while perhaps more remote, is similar to that in an overloaded vehicle, which we have consistently held justifies a substantial risk enhancement. See United States v. Palomares-Alcantar, 406 F.3d 966, 968 (8th Cir. 2005); United States v. Flores-Flores, 356 F.3d 861, 862 (8th Cir. 2004); United States v. Ortiz, 242 F.3d 1078, 1078–79 (8th Cir. 2001). Accordingly, the district court is affirmed on this issue.

## C. The Vulnerable Victim Enhancement.

To apply an enhancement under Section 3A1.1(b), the district court must "determine whether a victim was, in the words of application note 2, 'unusually vulnerable due to age' or some other characteristic." United States v. Anderson, 349 F.3d 568, 572 (8th Cir. 2003). This "requires a fact-based explanation of why advanced age or some other characteristic made one or more victims 'unusually

vulnerable' to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability."  Id.

De Oliveira asserts that the district court erred in applying the vulnerable-victim enhancement both because it failed to provide an adequate factual explanation and because the record does not support the enhancement.  De Oliveira argues that the undocumented workers were not particularly vulnerable because they could have left. We agree in part.

The district court applied the vulnerable-victim enhancement because of the victims' status as illegal immigrants, stating: "These victims, I think, were particularly susceptible to exploitation and perhaps unwarranted danger due to their illegal status, as I've already mentioned."  The district court appeared to be adopting the rationale for the enhancement contained in the PSR, which concluded that the undocumented workers were vulnerable because their status prevented them from going to the authorities when De Oliveira refused to pay them.  We find this rationale insufficient because the workers' status as illegal aliens does not alone justify a vulnerable-victim enhancement under the facts of this case.

First, the workers' immigration status was already factored into the offense guideline contained in Section 2L1.1, which deals exclusively with smuggling, transporting, or harboring illegal aliens.  Consequently, any attempt to increase De Oliveira's offense level under the vulnerable-victim provision based solely upon the workers' immigration status is impermissible double counting because the guidelines did not intend for the vulnerable-victim enhancement to apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline."  U.S.S.G. § 3A1.1 cmt. n.2; see also United States v. Rohwedder, 243 F.3d 423,  426–27 (8th Cir. 2001) (stating that double counting is impermissible unless "the Sentencing

Commission intended that result and each section concerns conceptually separate notions relating to sentencing.").

Second, the victims of the crime of harboring illegal aliens are, by definition, illegal aliens, and as such, the workers' immigration status does not distinguish them from other potential victims of the crime. Thus, the workers' immigration status did not alone make them more vulnerable in this case. United States v. Medina-Argueta, 454 F.3d 479, 482 (5th Cir. 2006) ("This court has determined that, in order for an illegally smuggled alien involved in a violation of 8 U.S.C. § 1324 to be a vulnerable victim, he must be 'more unusually vulnerable to being held captive than would be any other smuggled alien.'" (quoting United States v. Angeles-Mendoza, 407 F.3d 742, 748 (5th Cir. 2005)). Accordingly, we find that the district court materially erred by applying the vulnerable-victim enhancement without a sufficient factual analysis as to why the undocumented workers in this case were unusually vulnerable. Cf. United States v. Dock, 426 F.3d 269, 273 n.2 (5th Cir. 2005). Therefore, we must remand the case to the district court for further consideration of this issue. Gall v. United States, 552 U.S. 38, 51 (2007) (defining "failing to calculate (or improperly calculating) the Guidelines range" as "significant procedural error").

## D. The Role Enhancement.

Lastly, to apply an enhancement under Section 3B1.1(c), the district court must find that "the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). Each of these four terms is construed broadly. United States v. Adamson, 608 F.3d 1049, 1056 (8th Cir. 2010); United States v. Molina-Perez, 595 F.3d 854, 862 (8th Cir. 2010). De Oliveira argues that a role enhancement is unwarranted because the record shows that he was a sub-contractor, engaged in a legitimate business enterprise, who relied on his two crew chiefs to recruit and manage the workers. We disagree because of the underlying facts

in this case.  As De Oliveira admitted and as the other evidence showed, De Oliveira provided equipment and direction to the workers knowing that they were illegal, which is more than sufficient to establish the factual predicate for this enhancement. Accordingly, the district court is affirmed on this issue.

## III.

For the foregoing reasons, we affirm the district court in part, reverse in part, and remand the case for resentencing to consider the issue of whether the undocumented workers were vulnerable victims within the meaning of Section 3A1.1(b).

––––––––––––––––––––––––––––––